The **NATIONAL BANK OF AMERICA AT SALINA, SALINA, KANSAS,**
Plaintiff,

v.

James L. **CALHOUN,** Defendant.

No. T–3895.

United States District Court
D. Kansas.

Jan. 25, 1966.

Tom Lillard, Jr., of Clark, Mize, Lillard & Graves, Salina, Kan., for plaintiff.

John Q. Royce, of Hampton, Dunham, Royce & Engleman, Salina, Kan., for defendant.

TEMPLAR, District Judge.

On September 29, 1965 plaintiff filed in the State District Court of Saline County, Kansas its action against the defendant, James L. Calhoun for the purpose of recovering $55,347.02. It was alleged in the petition there filed that on or about May 18, 1965 one B. P. Grace known as Bob Grace deposited in his personal checking account in plaintiff bank a check in the amount of $36,324.51 dated May 18, 1965 executed by the defendant James L. Calhoun and made payable to B. P. Grace. It was further alleged that Grace deposited with the plaintiff's bank on May 18, 1965 a draft drawn on Jack Williams in the amount of $19,-022.51 thus making the total deposit of $55,347.02 which with funds previously deposited by Grace brought his total balance in his account in the bank to $56,-458.75.

The petition further alleged in substance that on May 22, 1965 plaintiff was notified that the draft drawn on Williams by Grace had been dishonored, that Grace thereafter and on the same date gave the bank a check dated May 22, 1965 in the amount of $19,225.51 executed by James L. Calhoun in order to replace the draft drawn on Williams in the account of Grace. It was further alleged that the checks executed by defendant Calhoun were drawn on the McDonald State Bank

in North Platte, Nebraska, and that when these checks were presented at that bank for payment in Nebraska, they were protested and certificates of protest were sent to and received by the plaintiff bank in the due course of business. It was further alleged in substance that plaintiff was a holder in due course of both of said checks, that it relied upon the validity thereof and paid out of the account of Grace in whose accounts the checks were deposited, a sum in excess of $55,347.02, and among these payments made by plaintiff included a check drawn by Grace in favor of the defendant Calhoun in the sum of $51,200.12 dated May 18, 1965 and which was paid by plaintiff on May 19, 1965.

Plaintiff first undertook to obtain summons by direct mailing under the provisions of K.S.A. 60–307. Plaintiff now concedes that the effort to obtain process under this statute is ineffective for the reason that no "property or debts owing to Calhoun" have yet been found in Kansas to support such service.

Thereafter service under the provisions of K.S.A. 60–308(b) (1) was undertaken. The method and manner and the general mechanics of service on the defendant in Nebraska under this statute are not challenged. However, defendant has filed a motion to quash this process and to dismiss the action on the grounds and for the reason that the process obtained was insufficient to give the Court jurisdiction of the person of the defendant in this action or to enter judgment herein.

It is conceded by both the parties that plaintiff is a national banking association with its place of business at Salina, Kansas, and is by virtue of 28 United States Code § 1348 deemed a citizen of the State of Kansas for purposes of this action. It is also conceded by the parties that the defendant is a natural person and that he is now and has been for many years a citizen and resident of the State of Nebraska. Likewise it does not seem to be seriously contended otherwise than that B. P. Grace to whom defendant issued two of the checks in question is and was at all times herein pertinent a resident

and citizen of the State of Kansas. Neither does it seem to be questioned that at least one of the checks written by the defendant Calhoun was executed and delivered by him within the State of Kansas. It does not seem to be questioned that the consideration for the checks given by defendant to Grace involved a business transaction occurring in the State of Kansas.

The defendant under applicable provisions of the law removed the action from the State Court to this Court and the matter is here for determination.

It does not appear that the Supreme Court of Kansas has had occasion to rule upon the applicability of this statute to the facts presented, nor upon the constitutionality of the law. It is defendant's contention that the issuance and service of the summons were not authorized by the statutes; that the statute is not sufficient to give the Court jurisdiction of the person of the defendant; that it is not sufficient to give the Court jurisdiction to enter a personal judgment against defendant and alternatively that the statute, if intended to provide jurisdiction over the person of a non-resident defendant under the facts in this case, is unconstitutional because it deprives him of substantial due process of law as guaranteed by the Constitution of the United States.

K.S.A. 60–308(a) (1) provides:

"Personal service of summons may be made upon any party outside the state. If upon a person domiciled in this state or upon a person who has submitted to the jurisdiction of the courts of this state, it shall have the force and effect of personal service of summons within this state; otherwise it shall have the force and effect of service by publication."

K.S.A. 60–308(b) provides:

"Submitting to Jurisdiction—Process. Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby sub-

mits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of the following acts:

(1) The transaction of any business within this state.

\* \* \* \* \* \*

Service of process on any person who is subject to the jurisdiction of the courts of this state, as provided in this sub-section (b) of this section may be made by personally serving the summons upon the defendant outside this state, as provided in sub-section (a) of this section, with the same force and effect as though summons had been personally served within this state, but only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this paragraph."

As defendant contends, it must be established in order to sustain process under this provision that the non-resident must have done one of the acts enumerated in the statute, and second, the cause of action must arise from the doing of said act. Otherwise it is contended by the defendant the Court may not obtain jurisdiction.

Obviously under such a construction of the statute two questions arise: (1) did defendant transact any business in this State, and (2) did the cause of action arising from acts and transactions of the defendant create a cause of action against him arising out of said acts?

■ The answer to the first question seems clear under the facts above set forth. The purpose of K.S.A. 60–308 is to permit cases to be tried in Kansas which have some reasonable connection with this state thus determining whether jurisdiction exists. Thus, the question is whether or not it is reasonable to close the courthouse doors of Kansas courts to a plaintiff alleging the kind of a claim or cause of action here involved; that is, one based upon the execution and delivery in Kansas, of a check drawn on a bank in the State of Nebraska, which check was deposited by the payee, a resident of Kansas with a Kansas bank which then credited the payee's account with the amount of the check and sent it through customary handling channels for presentment and payment to the bank in Nebraska on which it was drawn.

■ Though it appears that two of defendant's checks are here involved and one of them may have been drawn and delivered by defendant in the State of Nebraska and not in Kansas, the Court now determines from the circumstances that the giving of the two checks by defendant, one on or about May 18, 1965 executed and delivered by him in Kansas, and one on May 22, 1965 to B. P. Grace, the payee in both checks, which checks were deposited and credited to the account of Grace in plaintiff's bank, and the payment to defendant by plaintiff of a check drawn on Grace's account in favor of defendant on or about May 19, 1965 constituted one transaction or a series of transactions so closely related as to constitute the doing of business by defendant in Kansas for the purpose of determining jurisdiction under the applicable statute.

The Kansas statute in question was adopted from a similar provision of the Illinois Civil Practice Act.[1] The Act discards the concept of doing business as the exclusive test of jurisdiction and provides instead that personal jurisdiction may be asserted over any non-domiciliary if, in person or through an agent, he transacts any business within the state or commits a tortious act within the state, as long as the cause of action asserted is one arising from any of such acts.

The defendant's activities were sufficient to constitute the transaction of business in Kansas. This is not seriously questioned by him. His contention is

1. Illinois Stat.Ann.Chap. 110 Sec. 17.

that the statute under which plaintiff seeks to obtain personal jurisdiction over him requires not only that he must have transacted some business in Kansas out of which plaintiff's claim arises, but the cause of action constituting plaintiff's claim must arise from the doing of the act. Both of these elements, according to defendant, are necessary to give the Court jurisdiction of the person of the defendant in the Kansas Court. If either of these elements is missing, defendant contends jurisdiction must fail. He insists that prior to presentment of the checks, plaintiff had had no transaction of any kind with the defendant. The checks were put into the hands of the plaintiff when one B. P. Grace deposited the checks to his account in the bank. The checks are attached to the petition. Each check has printed on it: "James L. Calhoun, Tryon Route, North Platte, Nebraska." Each check is drawn on The McDonald State Bank, North Platte, Nebraska.

At the time plaintiff received the checks from its depositor it knew that in order to collect on said checks it would be necessary that they be presented for payment in North Platte, Nebraska. Plaintiff had no direct transaction with the defendant. When the checks were transferred to it, it accepted from its customer an undertaking by a Nebraska resident performable in Nebraska.

Thus defendant says that under these facts, plaintiff's cause of action did not arise until the checks of defendant Calhoun were presented for payment at the Nebraska bank and there the checks were neither accepted nor paid, and proceedings on dishonor were taken. It was not until then, defendant says, that plaintiff had any cause of action.

■ Subsection (b) of K.S.A. 60–308 uses the phrase "cause of action". The Kansas Rules of Civil Procedure, effective January 1, 1964 adopted the language of the Federal Rules describing the

basis of an action as a "claim". K.S.A. 60–208. No provisions, similar to 60–308(b) is found in the Federal Rules. We find in Gard's Kansas Code of Civil Procedure Ann.P. 30 the statement that the requirement that the pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief" says the same thing as the former statutory language, "statement of the facts constituting the cause of action in ordinary and concise language." This statement we approve and adopt. We believe the Supreme Court of Kansas would declare this to be the Kansas law.

■ The term "cause of action" is not easily defined, and the authorities have laid down no thoroughly satisfactory and all embracing definition. It may mean one thing for one purpose and something different for another, depending upon the circumstances under which the term is considered. It may consist of a right belonging to one person and some wrongful act or omission by another by which that right has been violated or facts which give rise as a matter of law to an obligation which the plaintiff may enforce against the defendant. It has also been defined as the subject of an action, the wrong for which the law prescribes a remedy.[2] There may be several rights of action and one cause of action and rights may accrue at different times from the same source.[3] It is fair to conclude that the Kansas legislature chose not to fix precise guidelines, as other states have done, so as to draw within the jurisdictional reach of the Kansas courts only contracts made within the state, or made in the state or to be performed in whole or in part by either party in the state. Instead, the test is whether or not there was "the transaction of any business within the state." Even though the last act marking the formal execution of the contract may not have occurred within Kansas, the statutory test may be satisfied by a showing of other purposeful

2. 1 Am.Jur.2d Title "Actions" Sec. 1 pp. 540–541.

3. 1 Am.Jur.2d Title "Actions" Sec. 2 p. 541.

acts performed by defendant in Kansas in relation to the contract, even though such acts were preliminary or subsequent to its execution. The activity in which defendant engaged in Kansas was in this case adequate to meet the liberal statutory criterion. Not only did the transactions upon which the suit is based have substantial connection with Kansas but the defendant's contacts in Kansas were such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Defendant in his brief sets out K.S.A. 52–602 which reads in pertinent part:

"The drawer, by drawing the instrument, admits the existence of the payee and his then capacity to endorse, and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it; * * "

 Defendant Calhoun, when he drew a check in Kansas and placed it in the hands of Grace, the payee, by such act did not contract to pay at the place on which the check was drawn but only guaranteed acceptance and payment at that place, and he engages that in default of payment, to reimburse the holder at the place where the check was made.[4] The drawer does not contract to pay the money in the place on which it was drawn, but agrees, in default of such payment, to reimburse the holder in principal and damages at the place where he caused the paper to be placed in channels of commerce. The validity of the check, the scope of the order to pay and the person authorized by the drawer to receive payment are fixed at the inception of the instrument and by the law of the place where the instrument has its inception.[5] By the execution of a check in Kansas, defendant agreed in Kansas, that if the check was not paid when presented in Nebraska, he would pay the holder the amount of check. Thus a Kansas contract was breached when the check was not accepted and paid and the cause of action contemplated by K.S.A. 60–308 (b) arose in Kansas.

The Court holds that the contract here had substantial connection with Kansas, that defendant's contacts in Kansas were such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The Court will not quote the explanation of the Kansas statute found in Gard's Kansas Code of Civil Procedure Anno. pp. 340–345 but adopts the pertinent statements there made as the law this Court believes that the Kansas courts would apply in interpreting the statute under consideration.

The Court's ruling in this case is based on the assumption that the evidence at trial will sustain the allegations and statements of plaintiff as to the time and place of the execution and delivery of the checks forming the basis of this action. The Court does not hold that the execution and delivery of a check by a resident of Nebraska, in the State of Nebraska, drawn on a Nebraska bank, though delivered to a Kansas resident to pay for property in Kansas would establish sufficient contact with the State of Kansas to sustain process upon which a personal judgment might be obtained under the provisions of K.S.A. 60–308.

The motion of defendant to quash service of summons personally served on defendant in Nebraska and to dismiss plaintiff's action is overruled.

It is so ordered.

---

4. 10 C.J.S. Bills & Notes § 35, p. 455.

5. See Howenstien v. Barnes, C.C.D.Kan., 12 Fed.Cas. p. 710, No. 6787. Swift & Co. v. Bankers Trust, 280 N.Y. 135, 19 N.E.2d 992.