No. 46,228

ROBERT L. HANSON, *Appellant*, v. J. ALBERT MURPHY, WARREN PATTEE and GEORGE SPRINGER, (J. Albert Murphy), *Appellee*.

(491 P. 2d 551)

Opinion filed December 11, 1971.

*Albert J. Kirk*, of Bogart, Turner, Kirk and Poe, of Wichita, argued the cause, and *Vincent L. Bogart*, of the same firm, was with him on the brief for the appellant.

No appearance for appellee.

The opinion of the court was delivered by

FOTH, C.: This is an appeal from an order quashing service of summons under our long arm statute, K. S. A. 60-308 (*b*), made on the defendant, J. Albert Murphy, a resident of Iowa. The motion to quash claimed no procedural deficiencies in the manner of service but went only to the question of jurisdiction over the person of the defendant.

Plaintiff claims to have been defrauded—and in one lawsuit it was determined that he was—by a franchise-selling operation out of Iowa. Advertisements in the Wichita papers and the blandishments of a salesman named Coy led plaintiff to become, in May, 1965, a licensee of Speed Print Duplicating, Inc., a purveyor of licenses which authorized its licensees to use its trade name in the printing business. When the results failed to live up to the expectations fostered by the ads and Coy's promises and the losses mounted, plaintiff looked for someone to sue.

His field of vision narrowed to Speed Print and "J. A. Murphy

Company, Inc.," and, in his first effort to obtain redress, in November, 1968, he sued both, alleging them to be Iowa corporations.

Speed Print shortly drops from sight, but Murphy remains as a central figure. At least three Murphy's appear in this narrative, and it is essential to understanding the plot to distinguish among them as best one can. The first is J. Albert Murphy, the individual who is the defendant-appellee in this action. The second is "The J. Albert Murphy Co.," sometimes known as "The Murphy Co.," sometimes as "J. A. Murphy d/b/a The J. Albert Murphy Co.," and sometimes as "The J. A. Murphy Co., Inc." Whether this Murphy was or is a corporation—or if so whether that fact should be ignored—is one of the points of contention in this case. The third is "J. Albert Murphy Enterprises, Inc.," surely a corporation but just as surely a creature of no substance and uncertain virtue. They will sometimes be referred to as "Murphy," "Murphy Co.," and "Enterprises," respectively.

Speed Print denied any fraud and included in its response to the petition a "cross-claim," not against the other *named* defendant, but against "J. A. Murphy, doing business as The J. Albert Murphy Company," claiming that he was the sole author of any fraud.

This "cross-claim," against "Murphy" individually, was dismissed on February 2, 1969, because he was never served with process. Its filing, however, apparently stirred just enough breeze for plaintiff's bird dogs to catch a whiff of their true quarry. On April 24, 1969, plaintiff moved to amend his petition to make "Murphy," himself, an additional party defendant. This motion was overruled on May 2, 1969, for reasons which do not appear. It may only be surmised that the impendency of the trial, to begin May 19, may have been a factor.

In the meantime the defendant named and served as the corporate "Murphy Co." answered, alleging its true name to be "Enterprises," and denying fraud. It cross-claimed against Speed Print for furnishing any information about the operation which might prove to be false; the disposition of this cross-claim does not appear in the record.

In any event, when trial to a jury was begun on the first case only "J. Albert Murphy Enterprises, Inc.," appeared as a defendant. The result was a judgment in favor of plaintiff, against that entity only, in the sum of $13,300.22.

In aid of execution of that judgment plaintiff conducted a debtor's

examination of our present defendant "Murphy," in his capacity of president of the corporate "Enterprises." As a result of the usual catechism it was discovered that "Enterprises" had nominal cash in the bank, no real estate, no leases, no office equipment, no vehicles, no stock, no notes, no mortgages, no bonds, no scrip, no securities, no copyrights or patents, no royalties, and no other assets of any kind; that it was wholly owned by "Murphy;" and that it occupied (rent free) quarters owned by "Murphy" personally, and used his car and his office furniture. Obviously his judgment against "Enterprises" would afford plaintiff no satisfaction and little comfort.

The result was this suit, based on the same alleged fraud but naming as defendants "Murphy" individually and two other individuals, whose roles do not appear.

The petition alleged:

"1. Plaintiff is an individual residing in Sedgwick County, Kansas; defendants are individuals residing in Des Moines, Iowa.

"2. On or about May 16, 1968, the plaintiff entered into a contract with Speed Print Duplication, Inc., through its agent, J. A. Murphy Co., Inc. acting through Jerry Coy.

"3. The defendants fraudulently induced plaintiff to enter into the contract by misrepresenting the training which would be given to plaintiff, by misrepresenting the earning potential of the franchise operation, and by misrepresenting the financing and leasing arrangements.

"4. The defendants were in a superior position and knew or should have known the problems which might arise with the equipment, training and basic income and should have related these facts to plaintiff; further, that a fiduciary relationship existed between plaintiff and defendants, and defendants breached their fiduciary duties.

"5. The defendants are indebted to the plaintiff in the following amounts: $28,609.67 actual damages and $20,000.00 punitive damages."

The prayer was for claimed damages. Plaintiff is now clearly attempting to pin the alleged fraud on "Murphy" personally, although Coy's agency is alleged to be on behalf of "Murphy Co., Inc."

The defendant Murphy's motion to quash was accompanied by his affidavit, the substantive portion stating:

"That he has not transacted any business within the State of Kansas nor has he committed any tortious act within said State nor does he own, use or possess any real estate situated in the State of Kansas nor has he contracted to insure any person, property or risk located within this State at the time of contracting, nor has he caused injury to persons or property within the State of Kansas arising out of any act or omission outside of this State while at the time of said jury he was engaged in solicitation or service activities within this State or that products, materials or things processed, serviced or manufactured by him any-

where were used or consumed within the State in the ordinary course of trade or use and that he has never lived in the State of Kansas, at any time."

As may be seen, the affidavit is purely conclusory in nature, negating one by one the statutory grounds for subjecting a non-resident to the jurisdiction of a Kansas court. As to each possible basis for asserting jurisdiction it amounted to a general denial and no more.

To counter this affidavit, plaintiff filed the affidavit of his attorney, verified on information and belief:

"1) On or about May 16, 1968, plaintiff entered into a contract with Speed Print Duplication, Inc. through its agent, J. Albert Murphy doing business as J. Albert Murphy Company.

"2) J. Albert Murphy Company was a sole proprietorship owned by J. Albert Murphy until July 25, 1969, at which time it was incorporated under Iowa law.

"3) The contract referred to in paragraph 1 was procured by Jerry Coy in Wichita, Kansas acting as an agent of defendant, J. Albert Murphy.

"4) J. Albert Murphy doing business as J. Albert Murphy Company entered into a contract with Speed Print Duplicating, Inc. for the sale of the latter's franchises and it was for the purpose of selling those franchises that defendant, J. Albert Murphy, acting through Jerry Coy, transacted business with plaintiff in Wichita, Kansas."

The motion to quash was nevertheless sustained. Plaintiff moved for reconsideration, filing the following additional affidavit, positively verified by counsel:

"1) J. Albert Murphy doing business as J. Albert Murphy Company entered into a contract with Speed Print Duplicating, Inc. for the sale of the latter's franchises, said contract being marked Exhibit 'A', attached hereto, and made a part hereof.

"2) On or about May 15, 1969, Gerald E. Coy's deposition was taken in Des Moines, Iowa, at which time he testified to the following (said deposition is filed with the Clerk of this Court, Case No. C 15570):

"a. That he worked for the J. Albert Murphy Company.

"b. That he sold Speed Print franchises.

"c. An advertisement appeared in The Wichita Eagle and was placed there by the J. Albert Murphy Company.

"d. He talked to plaintiff in Wichita, Kansas regarding a Speed Print franchise. Hanson called in response to the advertisement in the newspaper. As a result of Coy's conversation with Hanson, Coy procured Hanson's signature on the contract attached hereto and marked Exhibit 'B'.

"e. Coy told Hanson he (Coy) worked for the Murphy company.

"f. Coy was selling the Speed Print franchise for J. Albert Murphy.

"3) J. Albert Murphy Company was a sole proprietorship until July 25, 1969, on which date it became an Iowa corporation according to the official records of the State of Iowa."

On reconsideration the trial court adhered to its prior decision, and plaintiff appeals.

The thrust of plaintiff's argument is that Coy, when soliciting plaintiff's contract and making the alleged misrepresentations, was acting as the agent of the "Murphy Co.;" that the "Murphy Co.," whether incorporated or not, was but another name or the alter ego of "Murphy" personally; and that "Murphy" is personally liable for the acts of his agent, which were fraudulent (and therefore tortious). Because such acts were committed in Kansas, the argument goes, Murphy is subject to the jurisdiction of the Kansas courts because he either was transacting business under 60-308 ($b$) (1), or committed a tortious act under 60-308 ($b$) (2).

We do not have here the question raised in so many long arm cases of the "minimum contacts" required to confer jurisdiction. E. g., *Woodring v. Hall*, 200 Kan. 597, 438 P. 2d 135; *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P. 2d 128. The question presented to the trial court was whether Murphy was personally "present" in Kansas because either Coy was the agent of Murphy personally when he made the representations complained of, or newspaper advertisements were attributable to Murphy personally when inserted by the "Murphy Co." In either event it seems clear that if "Murphy" was the moving force, he can be held accountable in a Kansas court under our statute.

Thus the primary jurisdictional fact was Coy's agency—upon which fact also rested the merits of the case against "Murphy."

The dilemma presented by a question having this dual nature was considered in *Nelson v. Miller*, 11 Ill. 2d 378, 143 N. E. 2d 673, one of the first and leading cases construing the Illinois act from which our statute is taken. (See *Woodring v. Hall*, supra, where we took note of our statute's origin and followed *Nelson*.) The act there was challenged as placing a discriminatory burden on a non-resident to *disprove* liability in order to successfully challenge jurisdiction. The Illinois court rejected this construction saying:

"The jurisdictional fact, in the language of [the statute], is 'the commission of a tortious act within this State.' The word 'tortious' can, of course, be used to describe conduct that subjects the actor to tort liability. For its own purposes the Restatement so uses it. (Restatement, Torts, § 6.) It does not follow, however, that the word must have that meaning in a statute that is concerned with jurisdictional limits. To so hold would be to make the jurisdiction of the court depend upon the outcome of a trial on the merits. There is no indication that the General Assembly intended a result so unusual. The

essential question in cases of this type is where the action is to be tried. Once it has been determined that the relationship of the defendant to the State is sufficient to warrant trial here, we are of the opinion that the court has jurisdiction to determine the merits of the controversy, and that its jurisdiction will not be destroyed by its exercise." (11 Ill. 2d 378, 391, 143 N. E. 2d 673, at 680.)

The court reviewed one of the earliest long arm cases, *Smyth v. Twin State Improve. Corp.*, 116 Vt. 569, 80 A. 2d 664, 25 A. L. R. 2d 1193, and characterized its holding thus:

". . . Clearly, the Vermont court was of the opinion that the jurisdictional requirements of such a statute are met when the defendant, personally or through an agent, is the author of acts or omissions within the State, and when the complaint states a cause of action in tort arising from such conduct. We adopt that view. An act or omission within the State, in person or by an agent, is a sufficient basis for the exercise of jurisdiction to determine *whether or not the act or omission gives rise to liability in tort.*" (11 Ill. 2d 378, 393, 143 N. E. 2d 673, at 681; emphasis added.)

Finally, with specific reference to the issue here, the court concluded:

". . . to the extent that issues common to the merits and the jurisdictional question may be determined preliminarily by the court for purposes of a motion to quash, the determination will of course not be conclusive on the merits. . . . Thus the defendant on special appearance may deny that there was any act or omission in the State on his part, *or he may deny that the person whose conduct within the State is complained of was his agent or servant. The preliminary ruling on these issues of jurisdictional fact will not be determinative of the same issues when or if they arise on the merits.*" (11 Ill. 2d 378, 394, 143 N. E. 2d 673, at 681-2; emphasis added.)

We think the Illinois court's analysis is sound, including its view on the Vermont rule, and we continue to follow its precepts. It is true that we have no statute comparable to that of Illinois specifically providing that a finding of fact made in a preliminary determination of jurisdiction is not binding on the merits. We nevertheless believe that rule must obtain, even in the absence of a specific statute. Here the jurisdictional fact is agency; in *Nelson* the jurisdictional fact was negligence (including lack of contributory negligence), an ingredient required to render the act complained of "tortious." A binding determination of either fact, one way or the other, would largely determine the merits of the lawsuit. Either issue, an ultimate fact constituting the heart of the plaintiff's case, is such that if the underlying facts are in dispute the parties are entitled to have it finally determined only after a full fledged trial.

To this extent the court's function in ruling on such a motion to quash (*i. e.*, a motion to dismiss for lack of jurisdiction over the person) is analogous to its function in ruling on a motion for summary judgment. The motion cannot convert the trial into a "trial by affidavits." (*Brick v. City of Wichita*, 195 Kan. 206, 211, 403 P. 2d 964.)

The burden of showing jurisdiction is, of course, on plaintiff as the person invoking it. *White v. Goldthwaite*, 204 Kan. 83, Syl. ¶ 4, 460 P. 2d 578; *Oswalt Industries, Inc. v. Gilmore*, 297 F. Supp. 307 (D. C. Kan. 1969).

At the time it was required to rule the trial court was faced with:

(*a*) The allegations of the petition that Murphy committed fraud;

(*b*) Coy's testimony, from which it seems that he was the agent of the "Murphy Co." in whatever form it might have appeared; that the fraud occurred in Wichita, and from which it also might readily be inferred that he acted as the agent of Murphy personally;

(*c*) the fact that the "Murphy Co." was unincorporated at the time of the alleged fraud, and was the business name of Murphy personally; and

(*d*) Murphy's testimony that "Enterprises" was a hollow shell whose acts might on further showing be held attributable to Murphy personally.

On the other side there was only Murphy's bald assertions that he had not transacted business nor committed any tort in Kansas.

Clearly the ultimate fact of Coy's agency on behalf of the corporeal "Murphy" was disputed. Just as clearly, plaintiff presented a *prima facie* case for the existence of that fact. Plaintiff may not be able to prove all he claims at trial, but if he can, "Murphy" is subject to Kansas jurisdiction. We believe, on the record here, plaintiff was entitled to an opportunity to present his evidence of agency at a trial on the merits. It was therefore error to quash the service of summons.

The judgment is reversed.

APPROVED BY THE COURT.

O'CONNOR and PRAGER, JJ., not participating.