J. E. M. CORPORATION, a Kansas
Corporation, Plaintiff,

v.

Monty McCLELLAN, M. D., Harold M.
Vogel, Max Assoulin, Defendants.

Civ. A. No. 78–1069.

United States District Court,
D. Kansas.

Dec. 4, 1978.

Bruce A. Swenson, Arvin, Arvin & Busey, Wichita, Kan., for plaintiff.

Byron Brainerd of Curfman, Brainerd, Harris, Bell, Weigand & Depew, Wichita, Kan., for Harold M. Vogel.

Darrell D. Kellogg of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for Monty McClellan, M. D.

Evans, Koelzer, Marriott, Osborne & Kreizman, Red Bank, N. J., and Robert J. O'Connor, Wichita, Kan., for Max Assoulin.

## MEMORANDUM ORDER

THEIS, Chief Judge.

This matter comes before the Court on the motion of defendant Harold M. Vogel to dismiss the action pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of personal jurisdiction. Vogel was served in Chicago pursuant to Rule 4(e), Federal Rules of Civil Procedure, and the Kansas long arm statute, K.S.A. § 60–308(b).

Plaintiff alleges in this action that it contracted with defendant McClellan for the sale of an apartment complex for a total

purchase price of $310,000.00. McClellan allegedly agreed to assume a $200,000.00 note and to provide plaintiff with a quantity of jade valued at $110,000.00. Plaintiff alleges that in order to receive an appraisal value for the stones, it initiated a single phone call with Vogel in Chicago, who apparently was familiar with the jade in question. Plaintiff alleges that Vogel represented over the telephone that the jade was worth as much as McClellan claimed and that its value was increasing. Plaintiff now claims that the jade's true worth is only $15,000.00, that Vogel knew this to be the case, and that Vogel intentionally and fraudulently misrepresented the jade's value to mislead plaintiff and to induce plaintiff to enter into a contract upon this mistaken belief.

The primary issue before this Court is whether a fraudulent misrepresentation made from without the jurisdiction that causes tortious injury in the jurisdiction constitutes a "tortious act within this state" within the meaning of K.S.A. § 60–308(b)(2). This Court finds that it does. The long arm statute accordingly applies and Vogel falls within the ambit of service of process authorized under Kansas law.

The Kansas long arm statute in pertinent part provides:

"(b) Any person . . . who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of said acts:

(2) the commission of a tortious act within this state;

(7) causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided in addition, that at the time of the injury either (i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use."

Plaintiff has not made any effort to extend jurisdiction over Vogel under the provisions of subsection (b)(7) cited above. Having concluded that subsection (b)(2) applies on the given facts, this Court will not pursue an examination of the applicability of (b)(7), except with regard to its impact on the necessary statutory interpretation of (b)(2) as held herein.

This Court is careful to add that this holding is statutory only. Any inquiry into the propriety of personal jurisdiction necessarily requires a distinctly twofold analysis. The first question must address the propriety of service under statute or rule—whether the state or federal government has authorized service under circumstances applicable to the given defendant. The second question is separate and independent of the first—whether the exercise of the jurisdiction properly invoked by statute or rule is consistent with the constitutional due process standards set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). See *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489 (5th Cir. 1974); *Margoles v. Johns,* 157 U.S. App.D.C. 209, 483 F.2d 1212, 1220 (1973); *Beaty v. M. S. Steel Co.,* 401 F.2d 157 (4th Cir. 1968); *Time, Inc. v. Manning,* 366 F.2d 690, 693 (5th Cir. 1966); *Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co.,* 304 F.2d 915, 918 (1st Cir. 1962); *Schreiber v. Allis-Chalmers Corp.,* 448 F.Supp. 1079, 1085 (D.Kan.1978); *Professional Investors Life Ins. Co. v. Roussel,* 445 F.Supp. 687 (D.Kan.1978). A motion to dismiss for lack of personal jurisdiction may be granted on either basis alone. Cases must be carefully distinguished on the basis of statutory holdings that find a defendant not within the literal terms of the statute or rule that authorizes service, and constitutional holdings that find the exercise of jurisdiction, once properly invoked by statute or rule, inconsistent with due process standards.

See, e. g., *Margoles v. Johns,* supra; *Beaty v. M. S. Steel Co.,* supra.

■ An initial matter for consideration is the standard of proof required for a determination of statutory applicability. Vogel, of course, denies having made a misrepresentation or committed fraud. In his answer he admits having a conversation with plaintiff concerning the value of some jade. It is not true under Kansas law that a plaintiff must initially prove the ultimate fact of tort liability as a precondition to filing an action and obtaining service under subsection (b)(2). This would make the existence of personal jurisdiction dependent upon the outcome of a trial on the merits. Courts of different states have chosen various standards for the degree of required proof. See cases cited in Casad, *Long Arm and Convenient Forum,* 20 Kan.L.Rev. 1, 16 (1971) [hereinafter cited as Casad, *Long Arm*]. The Kansas court has specifically held that for service to issue under the long arm statute, plaintiff need only make out a prima facie case that a defendant has committed those acts which allegedly give rise to liability. *Hanson v. Murphy,* 208 Kan. 297, 301, 491 P.2d 551 (1971); see also *Professional Investors Life Ins. Co. v. Roussel,* supra, at 692. The jurisdictional use of the language "commits a tortious act" therefore differs from its use in the context of liability.

> "The jurisdictional requirements of such a statute are met when the defendant, personally or through an agent, is the author of acts or omissions within the State, and when the complaint states a cause of action in tort arising from such conduct. . . .
>
> "An act or omission within the State . . . is a sufficient basis for the exercise of jurisdiction to determine whether or not the act or omission gives rise to liability in tort."

*Nelson v. Miller,* 11 Ill.2d 378, 393, 143 N.E.2d 673, 681 (1957), cited with approval in *Hanson v. Murphy,* supra. See also Casad, *Long Arm,* supra, at 15–16.

In the instant case plaintiff's allegations and Vogel's answer are sufficient to make out a prima facie case that the allegedly fraudulent statements were made. This adequately brings Vogel within the reach of the statute. Vogel has not denied that a phone call was made. The sole dispute is a factual question regarding the content of the discussion—the same question that must ultimately be determined at the trial on the merits. Although the matter might have been more thoroughly presented to the Court at this stage of the proceedings by affidavits, plaintiff has made a sufficient showing to establish threshold jurisdiction.

■ The second and primary matter for consideration is the statutory construction of subsection (b)(2) of the Kansas long arm statute. Plaintiff argues that an intentional misrepresentation made to Kansas by phone from Illinois constitutes a tort within Kansas and therefore is a "tortious act within this state." Plaintiff is not without considerable authority for this proposition.

The Kansas Supreme Court has expressly recognized that the committee which drafted the Kansas Code of Civil Procedure "lifted bodily" the first four subsections of the long arm statute, including subsection (b)(2), from the Illinois Civil Practice Act of 1955, Ill.Ann.Stat. ch. 110 § 17. *Woodring v. Hall,* 200 Kan. 597, 600, 438 P.2d 135 (1968); 1963 Kan.Laws, ch. 303, § 60–308. The Kansas Court has also recognized and applied the rule that a statute adopted from another state "carries with it the construction placed upon it by the courts of that state." *Barr v. MacHarg,* 203 Kan. 612, 615, 455 P.2d 516, 519 (1969); *Woodring v. Hall,* supra, 200 Kan. at 601, 438 P.2d 135; *McHenry v. Hubbard,* 156 Kan. 415, 420, 134 P.2d 1107 (1943). The Court in *Barr v. MacHarg,* supra, expressly adopted the Illinois interpretation of subsection (b)(2), as the Court in *Woodring v. Hall* adopted the Illinois interpretation of the "transacting business" provision codified in Kansas law at K.S.A. § 60–308(b)(1).

Before the Kansas legislature adopted the Illinois Act and before the Kansas court in *Barr v. MacHarg* adopted the Illinois interpretation of subsection (b)(2), the Illinois court had given its "tortious act" provi-

sion the identical construction advanced by plaintiff here. In *Gray v. American Radiator & Standard Sanity Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois Supreme Court held that the commission of a "tortious act in the forum" was the equivalent of the commission of a "tort in the forum." The Court found the phrase "tortious act" to be a composite of both negligence and damage. If the damage occurred within the state, then the tortious act occurred within the state within the meaning of the Illinois long arm statute. 176 N.E.2d at 763. Thus, when the Ohio manufacturer in *Gray* sold a valve to a Pennsylvania business that incorporated the valve into a water heater that produced an injury in Illinois, the Ohio manufacturer committed a "tortious act" in Illinois, even though the record disclosed that none of the defendant's employees or agents had ever set foot in Illinois.

Interpreting similar long arm provisions, other courts have also concluded that a tortious act without the forum that causes injury in the forum constitutes a "tortious act in the forum." *Thorington v. Cash*, 494 F.2d 582 (5th Cir. 1974) [Georgia statute; extraterritorial fraudulent misrepresentations by phone and mail]; *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972) [Massachusetts law; extraterritorial misrepresentations mailed into forum]. Two other circuits and at least one other state court have expressly taken a contrary view. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) [Ohio law; extraterritorial misrepresentations by phone and mail]; *Margoles v. Johns*, supra [District of Columbia law; extraterritorial slanderous statement made by phone into forum]; *Feathers v. McLucas*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

Two problems arise with this Court's adoption of the Illinois "tort in state" construction of the "tortious act in state" long arm provision. The first concerns consistent statutory interpretation of subsections (b)(2) and (b)(7) of the long arm statute, both enacted simultaneously in 1963 Kan. Laws, ch. 303, §§ 60–308(b)(2) and (b)(5). The second and related problem concerns

those prior Kansas cases that implicitly or expressly approach the problem, but take inconsistent results.

Notwithstanding the Illinois interpretation of subsection (b)(2) in *Gray*, the Kansas legislature chose to enact simultaneously both (b)(2) and another long arm provision, subsection (b)(7), that covered the specific factual situation of *Gray*. An argument might be made that if subsection (b)(7) authorizes service when injury within the forum results from acts without, then (b)(2) must accordingly be restricted to cases where injury within the forum results from acts within the forum. A contrary interpretation, the argument suggests, would produce an overlap between the two subsections and subsume (b)(7) within the ambit of (b)(2). Subsection (b)(7) authorizes service only upon satisfaction of one of two different conditions—either the nonresident must have solicited or performed services within the forum, or he must have placed products into the stream of commerce. Reading the statute in pari materia, this Court could not interpret (b)(2) as authorizing service for all cases of injury in the forum, as in *Gray*, lest that subsection permit service on those nonresidents contemplated within (b)(7), regardless whether the latter subsection's two conditions are met. Thus, the argument raises an inherent inconsistency in statutory construction that might favor a narrower interpretation of (b)(2).

This argument, however, rests upon an incorrect premise. As noted above, subsection (b)(7) was not taken from the Illinois statute, but rather was borrowed from Wisconsin law and clearly intended to provide jurisdiction over foreign manufacturers or suppliers in product liability cases. *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 647, 438 P.2d 128 (1968). Although Illinois had already construed the "tortious act" provision broadly enough to cover such cases, the framers of the 1964 code did not want to leave any doubt that they intended product liability cases to be covered by the Kansas statute. See Casad, *Long Arm*, supra, at 37. This legislative trepidation is

easily understandable in light of the conflict of authority regarding whether product liability and breach of warranty actions sound in tort or contract for other purposes such as choice of law and statutes of limitations. See, e. g., *Stubblefield v. Johnson-Fagg, Inc.,* 379 F.2d 270, 273 (10th Cir. 1967) [warranty claim treated as contract for choice of law purposes]; *Bilancia v. General Motors Corp.,* 538 F.2d 621 (4th Cir. 1976) [tort]; *Whitaker v. Harvell-Kilgore Corp.,* 418 F.2d 1010 (5th Cir. 1969) [tort]; *Prashker v. Beech Aircraft Corp.,* 258 F.2d 602, 607 (3rd Cir. 1958) [contract]; *Quadrini v. Sikorsky Aircraft Division,* 425 F.Supp. 81, 89 (D.Conn.1977) [contract]; *Uppgren v. Executive Aviation Services, Inc.,* 326 F.Supp. 709 (D.Md.1971) [tort]; See also, Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn.L.Rev. 791, 802 (1966) [tort].

There is, however, no conflict of statutory interpretation when (b)(7) specifically applies only to product liability injury and not to common law tortious injury. The Kansas court in *Tilley* implicitly indicated that this is the proper interpretation of (b)(7). The federal district court in *Stonecipher v. Sexton,* 54 F.R.D. 435 (D.Kan.1972) (O'Connor, J.), has expressly so held. In a malpractice case the Court in *Stonecipher* noted that subsection (b)(7)—then (b)(5) in the statutory scheme—"was designed to secure in personam jurisdiction over non-domiciliary defendants in 'product hazard' cases." The Court then concluded:

"Consequently, that particular subsection of the statute can have no application to the case under consideration."

Id. at 438. See also, *Professional Investors Life Ins. Co. v. Roussel,* supra, at 694 [subsection "primarily designed for application in the products liability situation since additional requirements of commercial operation must be met."]. The Georgia Supreme Court has also concluded that its comparable "tortious act in forum" provision applies to tortious acts outside the forum that cause injury within, notwithstanding the presence of a section comparable to Kansas' subsection (b)(7). *Coe & Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 195 S.E.2d 399 (1973); see also, Ga.Code Ann. §§ 24-113.1(b) and (c). By the clear indication of the legislative intent, the reference in subsection (b)(7) to those who "cause injury" in the forum does not embrace those who cause common law tortious injury in the forum, and who are, therefore, subject to service under subsection (b)(2).

A contrary interpretation of the statute would produce equally inconsistent results. If solely the presence of (b)(7) circumscribes the application of (b)(2), then the legislature curiously caused the constriction of the long arm statute's breadth when it made a conscious effort to expand the statute and assure its application to yet another specific factual circumstance. This reasoning may still beg the ultimate question of whether the legislature meant to embrace the Illinois concept of "tortious act" in its adoption of (b)(2), but this Court considers that question not difficult to answer.

The Kansas Supreme Court has repeatedly held that the Kansas long arm statute "reflects a conscientious state policy to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause . . . ." *Woodring v. Hall,* supra, 200 Kan. at 602, 438 P.2d at 141; *Whisenant v. Whisenant,* 219 Kan. 387, 548 P.2d 470 (1976); *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 (1974). Consistent with that policy courts have frequently interpreted the statutory long arm provisions as broadly as possible, leaving as a restriction on extraterritorial service only the constraints of the due process clause, once the statute is found applicable. See *International Pizza Hut Franchise Holders Ass'n. v. Supreme Pizza, Inc.,* 464 F.Supp. 65, (D.Kan.1978); *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483 (D.Kan. 1978); *Professional Investors Life Ins. Co. v. Roussel,* supra. If the statute is to reach as far as due process permits, a broad statutory interpretation is necessary.

"A case should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable

construction of the language could it be said to fall within the statute's terms." Casad, *Long Arm,* supra, at 45.

Legislative reaction to court precedent is enlightening in this regard and supports the position that this Court has chosen. In *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 (1969), the Kansas Supreme Court narrowly construed the Kansas "transacting business" provision as seemingly requiring an act by the defendant in the forum. Similarly, two federal cases indicated that a physical act by the defendant in the forum was necessary to the application of the "transacting business" provision found in K.S.A. § 60–308(b)(1). *Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307 (D.Kan. 1969); *National Bank of America v. Calhoun,* 253 F.Supp. 346 (D.Kan.1966). The legislature responded by adding a new provision, subsection (b)(5), which authorizes service on a nonresident who contracts with a Kansas resident for performance in Kansas by either party, regardless whether the nonresident is ever physically present in the state. See Casad, *Long Arm,* supra, at 24–25.

A federal court also held that the long arm statute did not authorize service on a corporate officer or director whose only contact with the state was in his corporate capacity. *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir. 1969). The Kansas legislature responded with a new provision that authorizes service on any nonresident who serves as an officer or director of a corporation that either has a "place of business" in Kansas or is organized under Kansas law. K.S.A. § 60–308(b)(6). Similarly, when the Kansas Supreme Court held that the conception of a child did not fall within the extant long arm provisions, see *Whisenant v. Whisenant,* supra; *State ex rel. Carrington v. Schutts,* 217 Kan. 175, 535 P.2d 982 (1975), the legislature added a new provision that expressly brings paternity within the long arm statute. K.S.A. § 60–308(b)(10).

This Court need not belabor the point. Nor should the Court burden the legislature with yet another narrowing construction of the long arm statute. The old maxim that fact is broader than diction has an apt message which is instructive here. A continuation of the older, narrower approach to construction merely requires the legislature to add new statutory subsections, each of which might likely be hotly contested by litigants who are encouraged to draw a narrow perimeter around the newly enlarged statutory reach, regardless whether due process might permit the exercise of jurisdiction under the circumstances.

The state legislature, if not always the judiciary, has clearly and consistently indicated its intention to expand jurisdiction under the long arm statute to the fullest extent permissible under the Fourteenth Amendment. This does not mean, of course, that the specified "acts" in the long arm statute may be ignored. Only under the circumstances embraced by those provisions may service issue and may the exercise of jurisdiction under any set of facts be constitutionally tested. See Casad, *Long Arm,* supra, at 39, 45. To the extent that courts narrowly hold the statute inapplicable to individual factual situations, however, service of process in Kansas is restricted statutorily, rather than by the limits of the due process clause. This is contrary to the "conscientious state policy" expressed in the legislative enactment of the long arm statute.

This leads this Court to conclude that the Kansas legislature indeed intended to draw from Illinois its "tort in state" conception of the "tortious act in state" long arm provision, leaving, however, product liability cases to fall within the ambit of the special subsection found in K.S.A. § 60–308(b)(7). When the Kansas court first acknowledged the adoption of the Illinois long arm provisions, it quoted with approval the language in *Nelson v. Miller,* supra, 11 Ill.2d at 384, 143 N.E.2d 673, that dealt with the "tortious act in state" provision:

"The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the am-

bit of the State's legitimate protective policy."

*Woodring v. Hall,* supra, 200 Kan. at 601, 438 P.2d at 140. Fraud and deceit in inducement to contract are clearly torts that may cause residents injury sufficient to invoke the state's legitimate protective interest.

The Kansas legislature has sought to extend jurisdiction over those who place defective products in the stream of commerce and who, therefore, may only anticipate that they might cause injury in a distant state and be subject to suit there. It would be most incongruous if the same legislature did not simultaneously intend to extend jurisdiction over nonresidents who send fraudulent misrepresentations into the forum state with the intention that they be relied upon by a resident to his or her detriment. See *Thorington v. Cash,* supra, at 587. Unlike the mere foreseeability of eventual injury in some unknown state that exists in product liability cases, direct, immediate and—in this case—intended injury to a specific resident of a specific state has been alleged. This would seemingly provide an even greater motivation for the enactment of a statutory provision designed to provide residents a forum within which to seek redress of their grievances.

The Kansas legislature has never indicated that a defendant's physical act in the forum should be a precondition to the application of subsection (b)(2). With the enactment of the present subsection (b)(5), the Kansas legislature indicated its intention to extend service in contract cases where a nonresident may have committed its breach outside the forum without ever setting foot in this state. See *Energy Reserves Group, Inc. v. Superior Oil Co.,* supra, 460 F.Supp. at 512–513. See also, *Prather v. Olson,* 1 Kan.App.2d 142, 146, 562 P.2d 142 (1977). It is inconceivable that the legislature did not also intend to extend service to tortious acts outside the forum that cause tortious injury to a resident in the state, particularly in this day of instant long-range communications when one can engage in extensive purposeful activity here without ever actually setting foot in the state. See *Professional Investors Life Ins. Co. v. Roussel,* supra, at 695, quoting *Ghazoul v. International Management Services, Inc.,* 398 F.Supp. 307 (S.D.N.Y.1975).

Subsection (b)(5) was only added by legislative enactment after one state court and two federal court decisions interpreted the (b)(1) "transacting business" provision not to apply to similar cases. This Court cannot carve a further exception into the long arm statute's reach and require the legislature to respond similarly in such express terms before such conduct might, if constitutional standards permit, be remediable in this state.

This Court also acknowledges that other decisions in this forum have approached the instant problem, but have not chosen to resolve it finally. In *Professional Investors Life Ins. Co. v. Roussel,* supra, plaintiff brought suit against various defendants for alleged tortious acts in taking over a Kansas holding company. Some defendants had physically committed acts in Kansas, but others had not. The Court there did not rely on the possibility of a "tort in the state" to establish proper service under the "tortious act in the state" provision. Rather, the Court found it sufficient that the nonresidents outside the forum had conspired with those who committed the tortious acts physically in the forum. The Court held that these nonresidents had, therefore, committed a tortious act in the forum through the "agent or instrumentality" of a co-conspirator. 445 F.Supp. at 695–696. Counsel argued and the Court expressly faced the issue whether the Kansas statutory provision in subsection (b)(2) adopted the Illinois "tort in state" construction. For argument, the Court assumed the existence of tortious injury in Kansas and expressed in dictum its wariness of finding Illinois law controlling. Id. at 694.

The Court in *Professional Investors* was primarily concerned with the decision of *State ex rel. Carrington v. Schutts,* supra, where the Kansas Supreme Court refused to bring within subsection (b)(2) the act of fathering a child in the state. The Illinois

court in *Poindexter v. Willis,* 87 Ill.App.2d 213, 231 N.E.2d 1 (1967), had construed the word "tortious" to include any breach of duty to another, including the duty to support a child. Speaking for the Kansas court, Chief Justice Fatzer acknowledged a split in state authority on this point, but refused to adopt the "strained construction" placed on the provision by the Illinois court. On the facts, the Court refrained from differentiating the use of "tortious" in a jurisdictional context from its use in a liability context, as it earlier had done in *Hanson v. Murphy,* supra. The Court held that a consensual act of sexual intercourse was simply not a "tortious act." *State ex rel. Carrington v. Schutts,* supra, 217 Kan. at 179, 180, 535 P.2d 982.

This Court is not convinced that *Schutts* has any significant bearing on the instant problem. In *Schutts* the Court was solely concerned with what constituted a "tortious act," whether within the forum or without. Indeed, the opinion makes it clear that both the act and injury alleged in the complaint occurred in Kansas. There was no discussion of any geographical constraint on the phrase "tortious act in the forum." On the facts of *Schutts* the Court could not discuss whether an act outside the state that caused injury in the state—a "tort in the state"—would constitute a "tortious act in the state" for jurisdictional purposes.

More important here, however, is the *Schutts* court's treatment of its departure from the Illinois interpretation of the comparable Illinois statute. The Kansas court again acknowledged that subsection (b)(2) was "lifted bodily" from the Illinois Act and that it carried with it the construction placed upon it by the Illinois courts at the time of its Kansas adoption. The Court then noted the exception of *Kansas v. Hill,* 189 Kan. 403, 369 P.2d 365 (1962)—another state's construction of its statute, imposed *after* that statute's adoption by the forum state, has no controlling effect on the adopting state. *Schutts,* supra, 217 Kan. at 179, 535 P.2d 982. Because *Poindexter v. Willis* was decided after the Kansas adoption of (b)(2), the Court did not deem it controlling. This is, of course, not the case

with the "tort in state" construction applied by Illinois before the Kansas adoption of its statute.

This Court is well aware that at least one eminent authority on this subject has previously speculated that the Kansas courts might not choose to follow the Illinois "tort in state" construction of the long arm statute. See Casad, *Long Arm,* supra, at 32. Even Professor Casad, however, acknowledged that his forecast was premised on older Kansas decisions, both state and federal, that either expressly or implicitly require a physical act in the forum before jurisdiction attaches. This problem frequently arises when cases confuse or blend together questions of statutory construction and constitutional application. As the Court stated in *Stonecipher v. Sexton,* supra, at 439:

> "Although each case must be decided on the peculiar facts presented, the Kansas court has made it abundantly clear the long arm statute was intended to permit *in personam* jurisdiction only in those fact situations which fall within the confines of the substantive due process requirements. Essentially, the same factors which enter into a determination of whether the literal requirements of the long arm statute have been met, are involved in deciding whether the concepts of due process . . . have been satisfied."

This Court respectfully disagrees. Although it is true that jurisdiction may not be exercised under the long arm statute when doing so would violate the due process constitutional standard, it is not true that jurisdiction may be exercised in every situation where due process permits. See *Professional Investors,* supra, at 694. Nor is it true that whenever the literal terms of the statute apply to a factual situation, the due process standard must necessarily be satisfied. The Court in *Tilley,* supra, 200 Kan. at 650, 438 P.2d 128, implicitly acknowledged the difference between the question of statutory application to a given set of facts and the question of the constitutional

exercise of jurisdiction on the same set of facts. This crucial difference, though often overlooked by counsel and courts, accounts for a court's authority to accept or reject the constitutionality of jurisdiction after the court has concluded that the statute applies on the given facts. Compare *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 937 (10th Cir. 1977) [jurisdiction upheld under subsection (b)(5)], with *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* supra [jurisdiction improper; due process standard unsatisfied by facts supporting application of subsection (b)(5)].

The difference exists between statutory and constitutional analysis in Kansas long arm questions because Kansas utilizes "enumerated acts" as a basis for the authorization of service. Because the listed acts may not be so broad as to embrace all the subtle factual distinctions that the fertile imaginations of creative lawyers may produce, the exercise of long arm jurisdiction in Kansas may not be coextensive with due process limitations. The *Schutts* case itself provides ample evidence of a circumstance where due process would likely permit the exercise of jurisdiction, had only the statutory scheme there embraced the offending "act." The expressed Kansas intention to extend jurisdiction to the full limits that due process permits, however, does militate in favor of a broad interpretation of each "enumerated act" provision. It most certainly does not permit a court to decide that a statutory requirement is met because the constitutional standard is satisfied. Nor does it permit a court to decide that the constitutional standard has been met solely because the statute has been satisfied. See Casad, *Long Arm,* supra, at 39.

Earlier decisions that rely heavily on a defendant's physical act in the forum draw support from the statutory language "business in this state" or "tortious act in this state." See, e. g., *Oswalt Industries, Inc. v. Gilmore,* supra; *National Bank of America v. Calhoun,* supra. The statutory language borrowed from Illinois was there enacted prior to the decisions of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and *McGee v. International Life Ins.*

*Co.,* 335 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The statute only permits jurisdiction over nonresidents on claims "arising out of" the doing of any of the "enumerated acts." The statutory reference to acts might permit the inference that jurisdiction may only be exercised over a nonresident who physically "acts" in Kansas.

There is no indication, however, that the legislature intended to engraft this limitation onto its long arm jurisdictional statute. A physical act in the forum is, of course, not necessary for the constitutional exercise of jurisdiction. See *McGee v. International Life Ins. Co.,* supra; *Travelers Health Ass'n. v. Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). Nor is it constitutionally necessary that a claim arise out of a nonresident's contacts with the forum before jurisdiction may be exercised. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). As noted above, the Kansas legislature has acknowledged the former by its authorization of service in situations where no physical act by or on behalf of the nonresident in the state is required. K.S.A. §§ 60-308(b)(5), (b)(6), (b)(7) (1976).

The legislative response to the limiting decisions of *Oswalt Industries* and *White v. Goldthwaite,* and the clear applicability of the more recent long arm amendments, convince this Court that there is no foundation to find a statutory requirement that a nonresident commit some physical tortious act in the forum before service is authorized under subsection (b)(2). There is dictum in *Stonecipher v. Sexton* to the contrary, but it is not controlling. The Court there stated, 54 F.R.D. at 440:

"What has been said [about the constitutional propriety of jurisdiction] also disposes of the contention that jurisdiction was conferred under K.S.A. 60-308(b)(2). The alleged tortious act was committed . . . in Illinois, not in Kansas."

The Court in *Stonecipher* had already determined that the exercise of jurisdiction on the given facts would offend traditional notions of fair play and substantial justice.

The situs of the nonresident's act was a relevant factor in the consideration of the constitutional propriety of the exercise of jurisdiction. The holding that due process constraints forbade the exercise of jurisdiction under subsection (b)(1) foreclosed the exercise of jurisdiction under any statutory provision. Nor is *Tilley* controlling authority to the contrary. The Court there was not presented with, nor did it consider, the argument that (b)(2) might have been applicable to the negligence claim asserted in that case. The Court stated that "[a]ll parties to this appeal have addressed their attention to this [the present (b)(7)] section and so do we." 200 Kan. at 647, 438 P.2d at 133.

The constitutional question regarding the exercise of jurisdiction warrants only brief mention. The central concern of the jurisdictional inquiry is the relationship among the defendant, the forum and the litigation, rather than the mutually exclusive territorial sovereignty of the several states. *Shaffer v. Heitner,* supra, 97 S.Ct. at 2580. The standard for the constitutional exercise of jurisdiction is not a mechanical or quantitative one, *International Shoe,* supra, 326 U.S. at 319, 66 S.Ct. 154, but rather is one of "fairness and substantial justice." *Shaffer,* supra, 97 S.Ct. at 2580. It relies upon the existence of "affiliating circumstances" that create a "sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). Inconvenience to the parties, the interests of the state in providing a forum for the action, the quality and nature of the defendant's activities, and whether these activities give rise to plaintiff's claim are relevant considerations. *Kulko,* supra, 98 S.Ct. at 1697; *International Shoe,* supra, 326 U.S. at 316–317, 319, 66 S.Ct. 154; and *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* supra, at 937.

This Court acknowledges the general disagreement whether the minimum contacts "fairness" test of *International Shoe* requires a physical nexus with the forum, reminiscent of old notions of territorial power, or whether the primary focus of that test is on the sole consideration of fairness. Under the latter approach, the character of defendant's activities is but one factor among many for consideration. That concern is not controlling here, for even the "physical impact" approach to minimum contacts or fundamental fairness only requires an impact within the forum. It does not require an act committed by a defendant physically present in the forum that would beckon a revival of *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877), foreclosed by *Shaffer v. Heitner,* supra, 97 S.Ct. at 2585 n.39. See Casad, *Shaffer v. Heitner: An End to Ambivalence in Jurisdiction Theory?,* 26 Kan.L.Rev. 61, 68–77 (1977).

On the facts in the record that establish plaintiff's prima facie case for jurisdictional purposes, it is clear that a sufficient constitutional basis for the exercise of jurisdiction exits. The intentional tortious act here causing injury to a resident in this forum in and of itself satisfies the criteria of *International Shoe* on a claim for damages arising from that act. *Thorington v. Cash,* supra, at 587.

IT IS THEREFORE ORDERED that the motion of the defendant Harold M. Vogel to dismiss for lack of personal jurisdiction is hereby denied.