[Civ. No. 15537. Fourth Dist., Div. Two. July 19, 1976.]

ABBOTT POWER CORPORATION, Plaintiff and Appellant, v. OVERHEAD ELECTRIC COMPANY et al., Defendants and Respondents.

## Counsel

M. Stephen Coontz for Plaintiff and Appellant.

Jones & Wilson and George W. Coleman for Defendants and Respondents.

## Opinion

KAUFMAN, J.—Plaintiff Abbott Power Corporation (hereinafter "plaintiff") appeals from an order of the trial court quashing service of summons upon defendant Uhl & Lopez Engineers, Inc. (hereinafter "Uhl & Lopez"). (See Code Civ. Proc., § 904.1, subd. (c).)

### Procedural Background

In a complaint filed March 21, 1975, plaintiff sued defendant Overhead Electric Company (hereinafter "Overhead") and Uhl & Lopez seeking compensatory damages against Overhead for breach of contract and compensatory and punitive damages against Uhl & Lopez for intentionally and maliciously inducing Overhead's alleged breach. Uhl & Lopez made a motion to quash service of process on the ground that the court lacked jurisdiction over it. (See Code Civ. Proc., § 418.10, subd. (a)(1).) After considering an affidavit filed in support of the motion and a declaration in opposition thereto, on May 22, 1975, the trial court granted the motion to quash.

### Facts

The material facts are not disputed.[1] Uhl & Lopez is a New Mexico corporation having its principal place of business in Albuquerque, New

[1]The facts are taken from the affidavit of J. Joseph Lopez in support of the motion to quash and the declaration of Patrick V. Gallagher in opposition to the motion. Gallagher's declaration incorporates by reference all allegations of the complaint, which,

Mexico. Uhl & Lopez is engaged in the business of consulting electrical engineering and employs electrical engineers licensed as such by the State of New Mexico, none of whom are licensed by the State of California. It does not do any business in the State of California. Uhl & Lopez was retained by the United States government to perform professional electrical engineering services for a project at the Los Alamos Scientific Laboratory, at Los Alamos, New Mexico. It was to perform the necessary design engineering work and to check and approve the engineering documents of the prime contractor and its subcontractors and suppliers. Uhl & Lopez had no contract with either plaintiff or Overhead.

Overhead is a California corporation having its principal place of business in Sacramento. It is the prime contractor on the government project in Los Alamos, New Mexico. Plaintiff is a California corporation having its principal place of business in Buena Park. In July 1974, plaintiff and Overhead entered into a contract pursuant to which plaintiff agreed to manufacture and supply the electrical switchgear for the Los Alamos project at a price of $275,854.

In October 1974 plaintiff prepared certain engineering drawings and other technical documents and sent them to Overhead which in turn forwarded them to Uhl & Lopez for approval. Notwithstanding that plaintiff had made no objection to nor indicated any deviation from the job specifications, Uhl & Lopez refused to process plaintiff's drawings until Uhl & Lopez received assurances from plaintiff that plaintiff would comply with the job specifications. In December 1974 Uhl & Lopez sent a letter to that effect to Overhead in Sacramento. Overhead, in turn, forwarded a copy of that letter to plaintiff. Patrick Gallagher, president of plaintiff, responded by letter to Overhead, giving such assurances and asking that its drawings and documents be approved as quickly as possible. On January 8, 1975, Uhl & Lopez wrote a second letter to Overhead in Sacramento stating that before work could progress, certain results from tests to be conducted on the equipment to be supplied by plaintiff would have to be provided. On January 21, 1975, Uhl & Lopez again wrote to Overhead in Sacramento requesting "certified test results" before certain information requested by Overhead could be supplied.

inasmuch as the complaint is not verified, could not otherwise have been considered by the trial court in ruling on the motion. (*Sheard* v. *Superior Court*, 40 Cal.App.3d 207, 212 [114 Cal.Rptr. 743].)

In his declaration in opposition to the motion to quash, Gallagher stated that Uhl & Lopez knew that their requested test results could not be submitted at that time inasmuch as the tests could not be performed by plaintiff until the equipment had been manufactured which, in turn, could not be done until Uhl & Lopez had approved plaintiff's drawings. Gallagher also stated that he had been informed that J. Joseph Lopez, the secretary-treasurer of Uhl & Lopez, had stated, both to the government contracting officer and to Mr. Ken Stevens, a representative of Overhead, that he did not want the electrical switchgear subcontract work to be performed by an "independent" manufacturer such as plaintiff but wanted the subcontract to be awarded to a "major" manufacturer.

The complaint, incorporated by reference into Gallagher's declaration, alleges that Uhl & Lopez knew of the contract between Overhead and plaintiff and intentionally and maliciously induced Overhead to breach its contract with plaintiff by purposefully refusing to review and approve plaintiff's drawings.

### Issue, Discussion and Disposition

The sole issue is whether Uhl & Lopez had sufficient contacts with the State of California to support judicial jurisdiction over it with respect to plaintiff's cause of action against it for intentionally inducing Overhead to breach its contract with plaintiff.

■ Section 410.10 of the Code of Civil Procedure provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." "By imposing no limitation except those imposed by constitutional considerations, this section authorizes the broadest possible exercise of judicial jurisdiction." (*Quattrone* v. *Superior Court,* 44 Cal.App.3d 296, 302 [118 Cal.Rptr. 548]; accord: *Sibley* v. *Superior Court,* 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

The outer limit of the constitutional exercise of jurisdiction over a foreign corporation was delineated by the United States Supreme Court in *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057] and *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]. In *McGee* the high court stated: "Since *Pennoyer* v. *Neff,* 95 U.S. 714, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of

state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. . . . More recently in *International Shoe Co.* v. *Washington* . . . the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *Id.,* at 316." (355 U.S. at p. 222 [2 L.Ed.2d at pp. 225-226].)

In its 1969 Annual Report to the Governor and the Legislature, the Judicial Council of California commented at length upon the effect of Code of Civil Procedure section 410.10. Its comment in that respect is reprinted as an annotation to Code of Civil Procedure section 410.10 in West's Annotated California Codes. Relying heavily on Restatement Second, Conflict of Laws, the Judicial Council discussed in its comment a number of bases for the exercise of judicial jurisdiction over foreign corporations. Pertinent to the case at hand, among these are "Doing an Act in State—Foreign Corporations" and "Causing Effects in State by Act Done Elsewhere—Foreign Corporations."

With respect to causing effects in the forum state by an act done elsewhere, the Judicial Council comment reads: "A state [has] power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable. [Citations omitted.] [¶] This rule is the same as in the case of a natural person." (14 West's Anno. Code Civ. Proc., p. 481; Rest.2d Conflict of Laws, §§ 37, 50 and com. *a* to § 50; cf. *Martinez* v. *Perlite Institute, Inc.,* 46 Cal.App.3d 393 [120 Cal.Rptr. 120]; *Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 296; *National Life of Florida Corp.* v. *Superior Court,* 21 Cal.App.3d 281 [98 Cal.Rptr. 435].)

" 'A state has a natural interest in the effects of an act within its territory even though the act itself was done elsewhere. The state may exercise judicial jurisdiction on the basis of such effects over the individual who did the act, or who caused the act to be done, provided

that the nature of these effects and of the individual's relationship to the state are such as to make the exercise of jurisdiction fair to the individual and reasonable from the standpoint of international and interstate systems. . . .'

"There are three possible situations: (1) the act was done with the intention of causing effects in the state; (2) the act, although not done with the intention of causing effects in the state could reasonably have been expected to do so; and (3) the act was not done with the intention of causing effects in the state and could not reasonably have been expected to do so. . . .

"The act may have been done with the intention of causing effects in the state. *If so, the state may exercise the same judicial jurisdiction over the actor* . . . as to causes of action arising from these effects *as it could have exercised if these effects had resulted from an act done within its territory.*" (Judicial Council comment, 14 West's Anno. Code Civ. Proc., pp. 472-473; Rest.2d Conflict of Laws, § 37, subsec. *a*.) (Italics added.)

We are thus referred to doing an act in the forum state as a basis of jurisdiction. "A state has power to exercise judicial jurisdiction over a foreign corporation which has done . . . an act in the state with respect to any cause of action in tort arising from such act . . . . [¶] This rule is the same as in the case of a natural person." (Judicial Council comment, 14 West's Anno. Code Civ. Proc., p. 481; Rest.2d Conflict of Laws, §§ 36(1), 49(1) and com. *a* to § 49(1); *National Life of Florida Corp.* v. *Superior Court, supra,* 21 Cal.App.3d at p. 287.)

" 'A state has a special interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort. . . . Hence . . . [i]t is reasonable that a state should exercise judicial jurisdiction over an individual who has done, or has caused to be done, in the state what is claimed to be a tortious act. . . .'

"This rule has its most obvious application to torts which involve acts or omissions that are dangerous to life or to tangible things, such as shooting a gun or driving an automobile within the state. [Citation omitted.] But it is not essential that the act or omission should actually constitute a tort or a dangerous act, or that the injury be to persons or

tangible things; it is enough that the complaint states a cause of action in tort based upon such act or omission, and the action may be based on injury to intangible interests, as, for example, one's reputation. [Citation omitted.]" (Judicial Council comment, 14 West's Anno. Code Civ. Proc., p. 470; Rest.2d Conflict of Laws, § 36(1), com. *c*.)

■ Applying these principles to the facts, jurisdiction over Uhl & Lopez can be posited on both bases of judicial jurisdiction: doing an act in the forum state and causing an effect in the forum state by an act or omission elsewhere.

The contention of Uhl & Lopez that it did no act in California is not accurate. It mailed to Overhead in Sacramento three letters, the first refusing to consider or approve plaintiff's drawings until plaintiff should give assurances of its intention to conform to the specifications, and the second and third refusing to consider or approve plaintiff's drawings until certain test results were furnished. At first blush these letters appear to be insignificant, but the truth is that they constitute in substantial part the instrumentality of the tort of which plaintiff complains, intentional interference with a contractual relationship. The sending of these three letters into California constituted, therefore, the doing of a significant act in California.

Even if we were to accept the argument of Uhl & Lopez that whatever action it took or did not take with respect to plaintiff's drawings, it did or did not do in New Mexico, we would still be faced with the fact that some action or inaction on the part of Uhl & Lopez in New Mexico allegedly resulted in an intentional interference in California with the contract between plaintiff and Overhead, a contract between two California corporations most likely entered into in California. Thus, the case is brought squarely within the purview of that basis of jurisdiction identified as causing an effect in the forum state by an act or omission elsewhere.

There remains, however, the caveat expressed in the Judicial Council comment (p. 277, *ante*) "unless the nature of the effects and of the corporation's relationship to the state make the exercise of such jurisdiction unreasonable." (14 West's Anno. Code Civ. Proc., p. 481; Rest.2d Conflict of Laws, §§ 37, 50 and com. *a* to § 50.) This caveat, as we understand it, is reflected in several of the decided cases as follows: "Once it is established that the defendant has engaged in activity of the requisite quality and nature [has the required minimum contacts] in the

forum state and that the cause of action is sufficiently connected with this activity [these minimum contacts], the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction." (*Buckeye Boiler Co.* v. *Superior Court*, 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57]; *Martinez* v. *Perlite Institute, Inc., supra,* 46 Cal.App.3d at p. 399; see also *McGee* v. *International Life Ins. Co., supra,* 355 U.S. at p. 223 [2 L.Ed.2d at p. 226]; *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].) Stated otherwise: "[A]t least in situations when, as here, justification for the exercise of jurisdiction is not obvious, the convenience of the parties is a factor to be considered in determining whether it would be fair to exercise jurisdiction over a defendant who resides in another state." (*Cornelison* v. *Chaney,* 16 Cal.3d 143, 150-151 [127 Cal.Rptr. 352, 545 P.2d 264]; see also *Martin* v. *Detroit Lions, Inc.,* 32 Cal.App.3d 472, 476 [108 Cal.Rptr. 23].)

In *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d at pages 225-226, are listed some of the considerations involved in this balance: "the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities." (See also *Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 151.)

In the case at bench, most of the witnesses and evidence (personnel and records of plaintiff and Overhead) are presumably in California. Only the personnel and records of Uhl & Lopez are in New Mexico. While defense of the action in California rather than New Mexico would probably involve some inconvenience to Uhl & Lopez, on balance, the availability of witnesses and evidence would seem to favor maintenance of the action in California. The interest of California in providing a forum for its "residents" is strong. The contract involved is between two California corporations and was presumably entered into in California. The breach of that contract will most seriously affect plaintiff, a California corporation. The California Supreme Court "has repeatedly emphasized that this state and its residents and taxpayers have a substantial interest in providing a forum where a resident may seek whatever redress is due him. (*Buckeye Boiler Co.* v. *Superior Court,* 71

Cal.2d 893, 899, 906 [80 Cal.Rptr. 113, 458 P.2d 57]; *Fisher Governor Co. v. Superior Court,* 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1].) The state also has an interest from the point of view of the orderly administration of the laws in assuming jurisdiction in cases where most of the evidence is within its borders and where a refusal to take jurisdiction may result in multiple litigation. [Fn. and citation omitted.]" (*Hall* v. *University of Nevada,* 8 Cal.3d 522, 525-526 [105 Cal.Rptr. 355, 503 P.2d 1363].) The present action joins causes of action against Overhead for breach of contract and against Uhl & Lopez for intentionally inducing that breach of contract. If California does not assume jurisdiction of the action against Uhl & Lopez there is a likelihood of two suits rather than one. Lastly, although Uhl & Lopez' activity within the State of California is limited to the sending of the three letters previously mentioned, the tort of which Uhl & Lopez is accused is directly related to and, for the most part, arises out of that local conduct of Uhl & Lopez.

We conclude that Uhl & Lopez had sufficient minimum contacts with the State of California in respect to the contract at issue to justify the assumption of judicial jurisdiction by a California court over Uhl & Lopez with respect to a cause of action for inducing a breach of that contract. We further conclude that the exercise of such jurisdiction by a California court is fair and reasonable.

In our view our conclusions are not inconsistent with the recent decision in *Sibley* v. *Superior Court, supra,* 16 Cal.3d 442. It is true that in that breach-of-contract case the court indicated that where jurisdiction is predicated on "occasional activities" there must be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, or some activity as a result of which defendant could anticipate economic benefit or some effect upon a matter as to which the forum state has enacted regulatory legislation. (16 Cal.3d at pp. 446-448.) There is no reason to require any special circumstances where, as here, the conduct charged is an intentional and malicious tort against a forum-based corporation.[2] The fundamental question is whether the exercise of jurisdiction is fair and reasonable. It is just as reasonable and fair, maybe more so, to subject a defendant to the jurisdiction of a state

---

[2] If the letters mailed into California by Uhl & Lopez were defamatory and Uhl & Lopez were charged with defamation, we think there can be no question but what a California court could constitutionally exercise jurisdiction. The result should not be different simply because the alleged tort is an intentional interference with a contractual relationship between two California corporations.

when it engages in conduct which is purposefully intended to harm a resident of that state as it is to subject a defendant to the jurisdiction of a state when that defendant has sought or anticipated economic benefit in that state from its out-of-state activities.

The order quashing service of summons upon Uhl & Lopez is reversed.

Tamura, Acting P. J., and Fogg, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 29, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.