James F. RIGGS, et al., Appellants,

v.

Julie COPLON, Appellee.

No. 08-81-00116-CV.

Court of Appeals of Texas,
El Paso.

June 16, 1982.

Rehearing Denied July 28, 1982.

Richard B. Tanner, Sr., Dallas, for appellants.

Gardere & Wynne, David R. Snodgrass, Dallas, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This appeal is from a judgment based upon and giving full faith and credit to a foreign judgment obtained by the Appellee against the Appellant in Superior Court of the State of California. We affirm.

Julie Coplon became closely acquainted with James Riggs while attending school in Dallas, where she was a classmate of Mr. Riggs' daughter. Mrs. Coplon subsequently obtained a graduate degree and went to work for an accounting firm in San Francisco. She passed her certified public accountant examinations. In August, 1974,

she went to work for Bank of America, and while working in a training position in San Francisco was assigned to the task of reviewing and assimilating materials for various loan applications. During her employment for the bank, she was assigned the task of reviewing a $12,000,000.00 loan application from Surety Industries with headquarters in Dallas, Texas.

In late 1974, Mrs. Coplon called Mr. Riggs in Dallas and asked him if he could check out Surety Industries and Chris Christopher, the head of the company. She advised him this was a confidential matter. He told her she could trust him on the investigation. She called him again about the middle of December, but at that time he had no information. On December 26, he called her at her office at the bank in San Francisco and inquired if she would be in her office all day because he said he intended to do some checking and get back in touch with her. She said she would be in all day.

Mr. Riggs then proceeded to the offices of Surety Industries where he proceeded to indicate to some of its officers that he could help with a loan application at the Bank of America. He wanted a 1% commission in order to make a favorable recommendation. In order to assure the Surety officers of his contact, he called Mrs. Coplon while in their office and discussed the loan with her and after the call, he gave the Surety officials her number so that they could confirm the contact was with Bank of America. They did in fact check out the number. When Mr. Riggs called the second time to confirm to Mrs. Coplon that Surety Industries was all right and give his approval for the loan, Surety recorded his conversation, without him or Mrs. Coplon being aware of such recording. The officials at Surety concluded that this was a "shakedown" operation, and they reported the incident to the bank and Mrs. Coplon was fired in January, 1975.

After losing her job, Mrs. Coplon was off work several months and went through severe depression. She was a patient at a psychiatric clinic for several weeks. Mrs. Coplon sued Mr. Riggs in California and

when he did not answer, she obtained a default judgment for $200,000.00 plus court costs. The present suit was brought to obtain a Texas judgment based upon the California judgment. Mr. Riggs answered the Texas suit and asserted that the California court had no jurisdiction over him and alleged that the foreign judgment was void and not entitled to full faith and credit. At the trial Julie Coplon, James Riggs and Joe B. Doorman, a vice-president for Surety Industries, all testified. There is little dispute in the facts. Riggs acknowledged contacting Surety, said he made the three calls to Mrs. Coplon at the bank in California and that on the third call he told her he had conducted his investigation and "Surety Industries looked okay." He denied saying that he could influence the loan and said the fee he was to receive was only for his investigation. He said he had no agreement to pay Mrs. Coplon anything or to split his fee with her.

Mr. Riggs does not do business in California and was never in the state concerning this transaction. His only contact with the state as to this transaction was to receive two calls from Mrs. Coplon, who was in California, and to make three calls back to her on December 26, 1974.

The first point of error asserts the California judgment was not entitled to full faith and credit because that court did not have in personam jurisdiction over Appellant. In *O'Brien v. Lanpar Company*, 399 S.W.2d 340 (Tex.1966), the court pointed out that the validity of a foreign judgment is controlled by the law of the state where the judgment was entered, but that the requirements of due process must be satisfied. In that case, the court held jurisdiction existed because the president of the Texas corporation went to the State of Illinois to retain the services of an attorney, who sued in that case for the unpaid balance due on his fee. Our case is not so simple because Mr. Riggs never appeared in California in regard to this transaction.

In considering California's jurisdiction over non-residents, the Supreme Court in *Sibley v. Superior Court of Los Angeles*

*County,* 16 Cal.3d 442, 128 Cal.Rptr. 34, 546 P.2d 322 (Cal.1976) said:

Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (*Buckeye Boiler Co. v. Superior Court, supra,* 71 Cal.2d 893 at p. 898, 80 Cal.Rptr. 113, 458 P.2d 57; *Quattrone v. Superior Court* (1975) 44 Cal.App.3d 296, 302, 118 Cal.Rptr. 548.) As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimal contacts with the state that ". . . the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316–317, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 citations omitted; *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264.)

One of the recognized bases for jurisdiction in California arises when the defendant has caused an "effect" in the state by an act or omission which occurs elsewhere.

The California "effect" standard was before the court in *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). In that case, a mother in California obtained a personal judgment for child support against a father who resided in New York after the parties' two children left their father and went to California to live with their mother. In concluding that the California court did not have personal jurisdiction over the father, the court said:

In light of our conclusion that appellant did not purposefully derive benefit from any activities relating to the State of California, it is apparent that the California Supreme Court's reliance on appellant's having caused an "effect" in California was misplaced.

\* \* \* \* \* \*

The circumstances in this case clearly render "unreasonable" California's assertion of personal jurisdiction. There is no claim that appellant has visited physical injury on either property or persons within the State of California. Compare *Hess v. Pawloski,* 274 U.S. 352, 71 L.Ed. 1091, 47 S.Ct. 632 (1927). The cause of action herein asserted arises, not from the defendant's commercial transactions in interstate commerce, but rather from his personal, domestic relations.

Thus, we see there is a limit on the "effect" doctrine as applied in California law.

The question, then, is whether the three telephone calls to Julie Coplon in California and her subsequent loss of her job bring her suit in California against James Riggs within the "effect" doctrine as applied by California law, and, if so, whether the maintenance of the suit offends traditional notions of fair play and substantial justice. The California courts have exercised jurisdiction over one who does some act with the intention of causing effects within the state. *Quattrone v. Superior Court for the County of Los Angeles,* 118 Cal.Rptr. 548, 44 Cal.App.3d 296 (Second District 1975). In that case, the court exercised jurisdiction over a Pennsylvania resident who prepared and submitted to a California company fraudulent financial data which resulted in his financial gain. A similar result was reached in *Abbott Power Corporation v. Overhead Electric Company,* 131 Cal.Rptr. 508, 60 Cal.App.3d 272 (Fourth District 1976). In that case, the court concluded that a New Mexico engineering firm was subject to jurisdiction in a California court even though it did no business in California. The defendant in that case mailed three letters to California which the court said resulted in an intentional interference in California with a contract between two California corporations. In discussing tort actions, the court quoted from the applicable California judicial council comment as follows:

"'A state has a special interest in exercising judicial jurisdiction over those who commit torts within its territory. This is

because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort. . . . Hence . . . [i]t is reasonable that a state should exercise judicial jurisdiction over an individual who has done, or has caused to be done, in the state what is claimed to be a tortious act. . . .'

"This rule has its most obvious application to torts which involve acts or omissions that are dangerous to life or to tangible things, such as shooting a gun or driving an automobile within the state. [Citation omitted.] But it is not essential that the act or omission should actually constitute a tort or a dangerous act, or that the injury be to persons or tangible things; it is enough that the complaint states a cause of action in tort based upon such act or omission, and the action may be based on injury to intangible interests, as, for example, one's reputation. [Citation omitted.]" (Judicial Council Comment, 14 West's Anno.Cal.Code, p. 470; Rest.2d, Conflict of Laws, Sec. 36(1), com. c.)

The court also noted the strong desire of California to provide a forum for its residents in seeking whatever redress is due them. The court in its opinion concluded:

The fundamental question is whether the exercise of jurisdiction is fair and reasonable. It is just as reasonable and fair, maybe more so, to subject a defendant to the jurisdiction of a state when it engages in conduct which is purposefully intended to harm a resident of that state as it is to subject a defendant to the jurisdiction of a state when that defendant has sought or anticipated economic benefit in that state from its out-of-state activities.

Consistent with the results we reach is the holding in *J. E. M. Corporation v. McClellan*, 462 F.Supp. 1246 (USDC Kan. 1978), where the court sustained jurisdiction in Kansas over an Illinois resident based upon a single telephone call. The court

concluded that a fraudulent misrepresentation made from without the jurisdiction that caused tortious injury in the jurisdiction came within the state's long-arm statute.

■ In each of these cases, the courts have applied the constitutional due process standard set forth in *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See*: Annotation, Minimum Contacts-Due Process, 62 L.Ed.2d 853 (1981). Following that standard and those cases noted above, we conclude that one who made calls into the State of California, and who did so with the intention of making a substantial fee and whose conduct resulted in substantial damage to a California resident, was "causing effects in the state" and it was not unreasonable for a California court to exercise jurisdiction over the out-of-state resident who caused the effect within that state. Appellant's Point of Error No. One is overruled.

■ Points of Error Nos. Two and Three assert error in the trial court's findings and failure to make additional findings of fact and conclusions of law. We find no error. The court did, as requested, make extensive findings of fact and conclusions of law. It is not reversible error for the trial court to refuse to make additional findings and conclusions which do not relate to ultimate or controlling issues or which conflict with the original findings already made. *Garcia v. Ramos*, 546 S.W.2d 400 (Tex.Civ.App.—Corpus Christi 1977, no writ). Points of Error Nos. Two and Three are overruled.

■ The fourth point of error asserts the trial court erred in making findings of fact based on the conclusion of a witness and hearsay testimony. This complaint is with regard to the judge's findings based upon the testimony of Mrs. Coplon as to the reasons why she was fired by the Bank of America. Her testimony was that prior to this incident, she had received good reviews on her work at the bank. Following the recording of her conversation with Mr. Riggs on December 26, 1974, an affidavit

was sent to the bank along with the recorded conversation. Shortly thereafter, Mrs. Coplon was fired. Her statement about the firing was to prove the fact that she was told the bank had evidence of an extortion attempt and not to in fact prove that one did exist. Testimony which is offered to prove a statement was made and not to prove the truth of the statement is not hearsay. Ray, 1A Texas Law of Evidence, Section 781 (1980). Point of Error No. Four is overruled.

The last point of error asserts the trial court erred in rendering judgment and making findings of fact which are not supported by the evidence. Where findings made by a trial court sitting without a jury are supported by any evidence of probative value, they must be sustained on appeal. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex.1979). We conclude that there was sufficient evidence to justify the trial court's findings in this case. Point of Error No. Five is overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

The Appellant urges two grounds of error in his Motion for Rehearing. Initially, it is asserted that the California court did not have *in personam* jurisdiction over this out-of-state Appellant. He suggests our original opinion focused on the conduct of the Appellee and not on his conduct. We disagree. We noted originally that the main question was focused on "the three telephone calls to Julie Coplon in California." The original opinion relies in part upon the holding in *J. E. M. Corporation v. McClellan*, 462 F.Supp. 1246 (USDC Kan.1978), which involved only one telephone call into the state exercising jurisdiction over an out-of-state resident. Point of Error No. One is overruled.

The second contention is that we erred in concluding that the hearsay testimony of Julie Coplon was only admitted to prove that a conversation took place. Under this point of error Appellant again contends that the foreign judgment could not be enforced in Texas because there was no competent evidence in the Texas case as to why Mrs. Coplon was fired and that her testimony in this regard was hearsay. This argument misses the point because of the failure of Appellant to recognize that under the full faith and credit clause the burden of showing the invalidity of the foreign judgment is upon the one attacking that judgment.

When a foreign judgment of a sister state regular on its face and properly authenticated is introduced in evidence, a prima facie case is established and the Texas law presumes that the foreign forum had jurisdiction over the cause and the parties unless disproved by extrinsic evidence or by the record itself. *Colson v. Thunderbird Building Materials*, 589 S.W.2d 836 (Tex. Civ.App.—Amarillo 1979, writ ref'd n. r. e.). The burden is then on the party resisting enforcement of the judgment to establish that it was not final and subsisting or that the court did not have jurisdiction to render it. *Mitchim v. Mitchim*, 518 S.W.2d 362 (Tex.1975). In seeking to enforce the California judgment in Texas, Mrs. Coplon was not required to relitigate the issue as to why she was fired by her employer in California. That issue was decided by the California court when it entered its judgment, and that decision is entitled to full faith and credit when the judgment is brought to this state to be enforced unless the extrinsic evidence shows the foreign court did not have jurisdiction. Since the burden to offer that extrinsic evidence rested upon the Appellant and not the Appellee, it was not incumbent upon Mrs. Coplon to offer valid proof concerning the basis for the termination of her employment in California. *Shelby International, Inc. v. Wiener*, 563 S.W.2d 324 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *A & S Distributing Company, Inc. v. Providence Pile Fabric Corporation*, 563 S.W.2d 281 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). Point of Error No. Two is overruled.

The Motion for Rehearing is overruled.