The **QUIKRETE COMPANIES, INC., Plaintiff,**

v.

**NOMIX CORPORATION, Defendant.**

**Civ. A. No. 1:88–CV–1080–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 5, 1989.

William H. Needle, Needle & Rosenberg, Atlanta, Ga., for plaintiff.

Carol Ann Eller, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

## ORDER

CAMP, District Judge.

Presently before this Court is defendant NOMIX Corporation's (hereinafter "NOMIX") Motion to Dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). Further, NOMIX moves pursuant to Fed.R.Civ.P. 12(b)(3) that Count II of plaintiff's Complaint be dismissed for lack of venue. For the reasons detailed below, defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED. Defendant's Motion to Dismiss for lack of venue is also DENIED.

This action arises out of the ownership by defendant NOMIX of two United States' patents: U.S. Patent Nos. 4,732,781 and 4,732,782. Plaintiff Quikrete Companies, Inc. (hereinafter "Quikrete") has for many years, manufactured and sold packaged concrete and related products. Defendant NOMIX is in the business of selling certain fast-setting cementitious products which do not require a mixture with water prior to placement around objects to be held in a vertical position, e.g., a fence post. Defendant's disputed patents relate to the use of those products.

In its Complaint, Quikrete seeks a declaratory judgment that both NOMIX patents are invalid and that plaintiff has not infringed on those patents. *See* Complaint Count I. Quikrete also alleges three other counts in its Complaint: Count II–Violations of Antitrust Laws, Count III–Unfair Competition, and Count IV–Tortious Interference with Contract. Defendant NOMIX now seeks a dismissal for lack of personal jurisdiction and venue.

## I. THE PARTIES

Plaintiff Quikrete is an Ohio corporation with its principal place of business in Georgia. Plaintiff is headquartered in Atlanta, Georgia, and sells concrete products in

Georgia and throughout the United States. Plaintiff also has business relationships with licensees who manufacture and sell Quikrete products. Defendant NOMIX is a Connecticut corporation with its principal place of business in Connecticut.

## II. STATEMENT OF FACTS

In ruling on defendant's Motion to Dismiss for lack of personal jurisdiction, this Court must first determine the extent to which defendant had contact with the State of Georgia. The facts pertinent to this threshold issue of jurisdiction have been extracted from the pleadings of record, the affidavit and deposition of Roger P. Pratt, Vice President of Sales and Marketing for NOMIX, and the deposition of H. Nash Babcock, President of NOMIX.

NOMIX is not incorporated in Georgia, has no office in Georgia, is not authorized to do business in Georgia, has no employees operating or domiciled in Georgia, has no mailing address or telephone number in Georgia, has no bank account in Georgia, and does not own any property in Georgia. Pratt Affidavit ¶ 3. However, the evidence has established that the following contacts do exist between NOMIX and the State of Georgia:

1. Periodically, until early 1988, NOMIX orally contacted independent marketing representatives whose territories included Georgia. These representatives were to be paid on a commission basis. Each of those arrangements was eventually terminated before any sale of NOMIX products had been generated. *Id.* ¶ 5.

2. "In January, 1988, a written agreement was entered into between NOMIX Corporation and Marketing Group South, a manufacturers' sales representative which is headquartered in Tuscaloosa, Alabama. Within a four-state territory which includes the State of Georgia, Marketing Group South is to solicit orders on a pure commission basis for NOMIX Corporation's products, subject to acceptance or rejection by NOMIX Corporation in Connecticut.... Marketing Group South has not generated any sales of NOMIX Corporation products in the State of Georgia." *Id.* ¶ 6.

3. NOMIX is also a party to an agreement with an Atlanta corporation, L & M Manufacturing, Inc., pursuant to which the manufacturer will mix, bag, store, and ship NOMIX products as specified by NOMIX. To date, L & M Manufacturing has not yet processed any NOMIX orders and has not been compensated. *Id.* ¶ 7.

4. One shipment of NOMIX PostSet, for $731.20, was sent into Georgia. *Id.* ¶ 8.

5. Mr. Pratt, NOMIX' Vice-President for Sales and Marketing, twice visited Georgia in 1987 in order to sales-train employees of the independent sales representatives. *Id.* ¶ 10.

6. In February, 1988, NOMIX' National Sales Manager spent two days in Georgia. His activities included accompanying representatives of Marketing Group South on their visits to four prospective customers in Georgia. *Id.* ¶ 10.

7. On April 8, 1987, NOMIX sent Quikrete a letter suggesting that Quikrete's products may be infringing NOMIX' patents. *See* Attachment 3 to Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss.

8. On May 9, 1988, NOMIX sent Quikrete a letter alleging patent infringement and threatening litigation. *See* Attachment 3 to Plaintiff's Supplemental Memorandum of Law in Response to Defendant's Motion to Dismiss.

9. In May, 1988, NOMIX mailed a series of letters to members of the trade in Georgia and throughout the United States, including Quikrete and several of its licensees, informing them of its intention to sue Quikrete for patent infringement. Pratt Affidavit ¶ 12. *See also* Attachment 3 to Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss. The following letter typifies those mailed by NOMIX:

Mr. R.C. White, Jr.

Associated Dist. Inc.

P.O. Box 7187

Atlanta, GA 30309

Quikrete has also been put on notice that upon successful completion of the litigation against the American Stone–Mix Corporation, NOMIX will commence action against Quikrete and will seek an amount for damages and infringements committed against our patent.

We will, of course, be happy to supply your company with our fine "NOMIX". Just give me a call at (203) 366–5600.

Very truly yours,
NOMIX CORPORATION
H. Nash Babcock
President

*See* Attachment 3 to Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss.

## III. CONCLUSIONS OF LAW

### A. STANDARD FOR GRANTING A MOTION TO DISMISS

The standard for granting a Motion to Dismiss for lack of personal jurisdiction made near the institution of the litigation and before substantial discovery, is clearly established in this circuit. A Motion to Dismiss for lack of personal jurisdiction "should be denied if plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hospital Corporation of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103 (11th Cir.1982)). Further, for purposes of a Motion to Dismiss, plaintiff's allegations must be accepted as true.

### B. PERSONAL JURISDICTION

The party invoking federal court jurisdiction over a nonresident defendant bears the burden of establishing the Court's jurisdiction. *Payne v. Kristofferson,* 631 F.Supp. 39 (N.D.Ga.1985). A court can assert personal jurisdiction over a nonresident if (1) the forum state has the power to exercise that jurisdiction and (2) that state's exercise of jurisdiction comports with constitutional due process. To answer the first question in this case, the Court must look to Georgia's Long Arm Statute, codified at O.C.G.A. § 9–10–91. Section 91(1) of the Georgia Long Arm, which authorizes jurisdiction over a nonresident who "[t]ransacts any business within this state," *id.,* "applies only to claims based on contract and not those sounding in tort." *Lutz v. Chrysler Corp. et al.,* 691 F.2d 996, 997 (11th Cir.1982). As there was never any contractual relationship between Quikrete and NOMIX, § 91(1) is not applicable to this action. *See* Pratt Affidavit, Paragraph 4. Plaintiff's allegations of patent invalidity[1], antitrust violations, unfair competition, and tortious interference with contract are all grounded in tort law and therefore depend on § 91(2) or § 91(3) for a jurisdictional basis. O.C.G.A. § 9–10–91(2) and § 9–10–91(3) state that Georgia courts may exercise personal jurisdiction over a nonresident who:

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state....

In cases such as this, where jurisdiction is based on defendant's tortious act, it is well-settled that the Georgia Long Arm Statute gives Georgia courts the power to exercise personal jurisdiction over nonresident defendants "to the maximum extent permitted by procedural due process."[2] *Coe & Payne Co. v. Wood–Mosaic Corp. et*

---

**1.** For purposes of establishing Long Arm jurisdiction, patent infringement constitutes a tort. *Carbice Corporation of America v. American Patents Development Corporation,* 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819 (1931); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975).

**2.** The Court disagrees with defendant's assertion that the Georgia Supreme Court, in *Gust v. Flint,* 257 Ga. 129, 356 S.E.2d 513 (1987), held that the Georgia Long Arm Statute is not to be construed to reach the limits of constitutional due process.

*al.*, 230 Ga. 58, 60, 195 S.E.2d 399 (1973). *See also Coca–Cola Company v. Proctor & Gamble Co.*, 595 F.Supp. 304, 306 (N.D. Ga.1983). Therefore, this Court need only consider whether the exercise of personal jurisdiction over NOMIX comports with constitutional due process.

#### 1. *Two Types of Personal Jurisdiction: General and Specific.*

■ To distinguish between general personal jurisdiction and specific personal jurisdiction, courts must examine the relationship between the cause of action and the defendant's contact with the forum. "General personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party had 'continuous and systematic' general business contacts with the forum state." *Delong Equipment Co. v. Washington Mills Abrasive Co. et al.*, 840 F.2d 843, 853 (11th Cir.1988) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 415, 96 L.Ed. 485 (1952)). If a defendant business is found to have the requisite continuous and systematic general business contacts with a forum, then it is amenable to suit in that forum even if plaintiff's cause of action does not stem from or relate directly to defendant's contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall, et al.*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

■ With specific jurisdiction, however, the nature of defendant's contacts with the state are such that it may only be held liable for causes of action stemming from a particular activity. The cause of action arises directly out of or is directly related to defendant's contacts with the forum. *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. The facts in the case at bar indicate that NOMIX lacked continuous and systematic contacts with Georgia. Therefore, if this Court has jurisdiction, it must be premised on specific personal jurisdiction. The test for determining specific personal jurisdiction is the two-pronged minimum contact analysis announced in *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and refined in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

#### 2. *Requirements of Constitutional Due Process for the Exercise of Specific Personal Jurisdiction.*

■ The constitutional inquiry begins and ends with the question posed by the Supreme Court in *International Shoe*, 326 U.S. 310, 66 S.Ct. 154; Does defendant have such minimum contacts with the forum so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Forty years later, in *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, the Supreme Court told us how to apply the dictates of *International Shoe*. The Court in *Burger King* articulated a two-pronged test for exercising personal jurisdiction: First, "the constitutional touchstone, ... whether the defendant purposefully established 'minimum contacts' in the forum State;" *id.* at 474, 105 S.Ct. at 2183, and second, "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160).

To satisfy the first prong and determine whether there was contact between defendant and the forum, the *Burger King* Court looked to two independent factors: foreseeability and purposeful availment. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct in connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp., et al. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The "purposeful availment" requirement, however, seeks to ensure that a nonresident "defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,'

or 'attenuated' contacts...." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 568.) Purposeful availment will be found if the defendant injects itself into the forum and "purposefully directs his activities toward forum residents." *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182. In *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court's most recent pronouncement on personal jurisdiction, the Court listed several factors to be considered when determining if a defendant purposefully availed himself of a forum state: (1) whether defendant designed its product for market in the forum; (2) whether defendant advertised in the forum; (3) whether defendant established channels for providing regular advice to customers in the forum; and (4) whether defendant has marketed the product through a distributor who has agreed to act as defendant's sales representative in the forum. *Id.,* 107 S.Ct. at 1033.

To satisfy the reasonableness prong, i.e., to determine whether the exercise of jurisdiction will comport with "traditional notions of fair play and substantial justice," the *Burger King* Court deferred to the five factors it had previously considered in *World–Wide Volkswagen:*

1. "[T]he burden on the defendant,"

2. "the forum State's interest in adjudicating the dispute,"

3. "the plaintiff's interest in obtaining convenient and effective relief,"

4. "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and

5. "the shared interest of the several States in furthering fundamental substantive social policies."

*World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (*cited by Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184).

Another factor considered by the courts to bear on reasonableness, is whether plaintiff has available an alternate forum. *See Lake v. Lake,* 817 F.2d 1416, 1422 (9th Cir.1987).

The two prongs of the *Burger King* test, minimum contacts and fairness, are designed to work together to establish or deny jurisdiction. A strong showing of either can compensate for a lesser showing of the other. For example, the five fairness factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Conversely, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

## C. APPLYING BURGER KING

### 1. *Minimum Contacts.*

■ This Court's exercise of personal jurisdiction over NOMIX comports with the dictates of *International Shoe* and its progeny. Accepting plaintiff's allegations as true, the Court finds that plaintiff Quikrete has alleged sufficient facts to support a reasonable inference that NOMIX can be subjected to the jurisdiction of the Northern District of Georgia. *See Jackam v. Hospital Corporation of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986) (citing *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103 (11th Cir. 1982)). This Court's exercise of specific personal jurisdiction over NOMIX satisfies both the Georgia Long Arm Statute and *International Shoe,* 326 U.S. 310, 66 S.Ct. 154, and its progeny.

Counts I, III and IV allege respectively, invalid patents, unfair competition, and tortious interference with contract. The impetus behind such allegations was NOMIX' letter writing campaign. Countless letters were sent to Quikrete itself, each charging patent infringement and threatening litigation. Countless others were sent all over

the United States and more importantly, in Georgia to Quikrete's licensees. Quikrete has alleged that such conduct "amount[s] to unfair competition under the common law ..." and "wantonly interfere[s] with QUIKRETE contracts and business relationships with its licensees." Complaint, ¶¶ 26, 28.

In *Rheodyne, Inc. v. Ramin', et al.*, 201 U.S.P.Q. 667 (N.D.Cal.1978), the court was asked to determine whether three letters alleging patent infringement and threatening suit, sent by a nonresident defendant to plaintiff, constitutes sufficient minimum contacts to subject defendant to the jurisdiction of plaintiff's forum. The court concluded that jurisdiction based only on the letters and without any other contacts, would offend traditional notions of substantial justice and fair play. *Id.* at 669. *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. To support such holding, the court carefully distinguished *Abbott Power Corporation v. Overhead Electric Co.*, 60 Cal.App.3d 272, 131 Cal.Rptr. 508 (1976): "However, [in *Abbott*,] the cause of action ... was intentional interference with a contractual relationship, a tort which it alleged defendant had committed by the sending of those very letters to a party with whom plaintiff had a contractual relationship." *Rheodyne*, 201 U.S.P.Q. at 668. Thus, the critical distinction between *Rheodyne* and *Abbott*, as between *Rheodyne* and the case at bar, lies in the fact that the letters themselves constitute the cause of action or the alleged tort.[3] Necessarily then, Quikrete has complied with the Georgia Long Arm Statute, O.C.G.A. § 9-10-91(2). The letters threatening Quikrete, which were sent to Quikrete's licensees are alleged to have constituted "a tortious act ... within this state." *Id.*

NOMIX' contacts with Georgia were such that it could have reasonably foreseen being haled into court in Georgia. *Cf. World-Wide Volkswagen Corp., et al. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). NOMIX engaged in conduct in Georgia which demonstrated its intention to enter the market in Georgia. NOMIX' contacts with Georgia were not random or fortuitous. NOMIX purposefully directed mailings to Georgia residents in an attempt to obtain an economic advantage over Quikrete, its local competitor. Additionally, NOMIX solicited customers in Georgia and contracted with a sales representative whose territory includes Georgia. *See supra* p. 570; *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

### 2. *Fairness.*

The exercise of jurisdiction over NOMIX also satisfies the second prong of *Burger King*, as it comports with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160. Other patent cases in which courts have denied jurisdiction on fairness grounds, are easily distinguished. In *Cascade Corporation v. Hiab-Foco AB*, 619 F.2d 36 (9th Cir.1980), plaintiff brought a declaratory judgment action to seek a declaration of noninfringement of defendant's patent. Jurisdiction was premised on the several letters written by defendant to plaintiff alleging infringement, and that twice, defendant's representatives had visited California to explore markets for its products. *Id.* at 37. The court found that jurisdiction based on such isolated contacts would offend "traditional notions of fair play and substantial justice." *Id.* at 38 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160).

A patent holder risks losing his rights in the patent if he fails to alert suspected infringers. *See National Standard Company, et al. v. Garbalizer Corporation of America*, 200 U.S.P.Q. 591, 593 (1977). Thus, like the defendant in *Cascade*, NOMIX can easily justify letters to Quikrete informing them of its patent. However, NOMIX, unlike the defendant in *Cascade*,

---

**3.** "It has been substantially recognized in this State that interference with contractual relations by a third party, such as inducing one to breach his contract with another, is an actionable tort for which the guilty party is liable in damages." *Piedmont Cotton Mills, Inc. et al. v. H.W. Ivey Construction Company, Inc.*, 109 Ga. App. 876, 879, 137 S.E.2d 528 (1964).

went one step further. It purposely mailed letters into Georgia to Quikrete's licensees. As the Eighth Circuit said in *B & J Manufacturing Company v. Solar Industries, Inc.*, 483 F.2d 594 (8th Cir.1973):

> Regardless of the validity of the defendant's patent, there is no doubt but that the request and threats were designed to reduce competition and thereby improve defendant's marketing and economic position. As such, we are convinced that the sending of these letters did, in a very real sense, constitute a transaction of business in Minnesota. Moreover, we note that the defendant is no stranger to Minnesota, and that it had a number of related contacts in the forum.

*Id.* at 598.

Neither is NOMIX a stranger in Georgia. The infringement letters do not constitute the only contacts defendant has with the State of Georgia. NOMIX has, on several occasions, evinced an intention to sell its packaged concrete products in Georgia. NOMIX has retained sales representatives in Georgia, has entered into an agreement with an Atlanta manufacturer, has sent personnel to Georgia for the purpose of training sales representatives, and has visited prospective Georgia customers. *See* Pratt Affidavit, ¶¶ 5, 6, 7, 9, 10.

The case which most closely resembles the one at bar, is *Marquest Medical Products, Inc. v. EMDE Corporation*, 496 F.Supp. 1242 (D.Col.1980). In that case, the defendant sent letters to plaintiff, and to plaintiff's present and potential customers, asserting that plaintiff had violated its patent and that both plaintiff and its customers could be sued. The court embarked upon an extensive due process analysis after determining that its long arm statute granted jurisdiction to the full extent of the Constitution. *Id.* at 1247. The court concluded that defendant had availed itself of the privilege of conducting business activities in Colorado:

> Because, as defendants admit, the parties are competitors in the highly competitive medical field of blood sampling apparatus, the sending of such a letter might have as one purpose the deterring

of future sales by Marquest [plaintiff] in Colorado and the improvement of EMDE's [defendant] economic and marketing position.... [D]efendant's communication concerning the alleged patent violations were initiated for business reasons.

*Id.* at 1249.

So too, has NOMIX availed itself of the privilege of conducting business in Georgia. The cement business is highly competitive. NOMIX visited Georgia to explore the possibilities of a product market. It then mailed letters into Georgia to deter future sales by Quikrete and to improve its own economic marketing position in Georgia.

Finally, we turn to the five fairness factors enumerated in *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. *See supra* p. 573. The Supreme Court has indicated that a defendant which purposefully avails itself of a forum could only defeat jurisdiction with a compelling argument that the fairness factors render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184. NOMIX has failed to make such a showing. NOMIX has demonstrated no prejudice or added burden that this Court's jurisdiction would impose upon it. Conversely, plaintiff has a strong "interest in obtaining convenient and effective relief." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564. The State of Georgia also has an independently powerful interest in adjudicating this patent dispute and protecting commerce within its borders. Consequently, the exercise of personal jurisdiction over NOMIX in Georgia, does not offend the "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160.

As plaintiff has satisfied both prongs of the *International Shoe–Burger King* test, defendant's Motion to Dismiss for lack of personal jurisdiction is hereby DENIED.

## IV. VENUE

Defendant NOMIX has argued that Count II of the Complaint should be dismissed for lack of venue. NOMIX con-

tends that venue cannot be sustained by Section 12 of the Clayton Act, 15 U.S.C. § 22 or by the general venue statute, 28 U.S.C. § 1391(b).

The special venue provisions of the Clayton Act were intended to broaden the usual venue provisions. *Sherman College of Straight Chiropractic, et al. v. American Chiropractic Association, Inc., et al.*, 534 F.Supp. 438, 440 (N.D.Ga.1982). Section 12 of the Clayton Act reads in pertinent part:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business....

15 U.S.C. § 22.

"The term 'transacts business' was added by Congress in 1914 with the clear intention to broaden venue in antitrust cases so as to enlarge the jurisdiction of the various federal district courts and to broaden the choices of forums available to plaintiffs in antitrust cases." *In re Chicken Antitrust Litigation*, 407 F.Supp. 1285 (N.D.Ga. 1975). Thus, the legislative intent behind Section 12 was to aid plaintiffs in bringing antitrust actions. *Sherman College* at 445.

 The oft-cited "transacts business" standard articulated in *United States v. Scophony Corporation of America*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), directs courts to examine whether "the defendant transacts business of a substantial character within the district in the ordinary and usual manner." *In re Chicken* at 1291 (citing *Scophony* ). Such business or commercial activity need not be continuous and systematic, especially if the cause of action springs directly from defendant's contact with the district. *In re Chicken* at 1291. As discussed earlier, defendant NOMIX' contacts with the Northern District of Georgia were neither fortuitous or isolated. NOMIX has, on several occasions, evinced an intention to sell its packaged concrete products in Georgia. NOMIX has retained sales representatives in Georgia, has entered into an agreement with an Atlanta manufacturer, has sent personnel to Georgia for the purpose of training sales repre-

sentatives, and has visited prospective Georgia customers. *See* Pratt Affidavit, ¶¶ 5, 6, 7, 9, 10. Additionally, NOMIX unleashed its letter writing campaign against Quikrete, sending letters to Quikrete and to its Georgia licensees. *See supra,* pp. 570 to 571. Additionally, NOMIX' activities in Georgia have directly given rise to plaintiff's cause of action.

The Eleventh Circuit recently stated in *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1523 (11th Cir.1985) that, "the court should oppose the plaintiff's choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities in fairness to *each* party." In view of the fact that the Northern District of Georgia is the proper venue for Counts I, III, IV, and that NOMIX' contacts with this forum were not insubstantial, this Court will not overrule plaintiff's choice of venue.

Consequently, defendant's Motion to Dismiss Count II of the Complaint for Lack of Venue is DENIED.

## CONCLUSION

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED. Defendant's Motion to Dismiss Count II for Lack of Venue is also DENIED.

SO ORDERED.